**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**UNITED STATES FIRE**
**INSURANCE CO.,**

    **Plaintiff,**

v.                                                          **Case No. 8:04-cv-2783-T-23TBM**

**FREEDOM VILLAGE OF SUN**
**CITY CENTER, LTD, et al.,**

    **Defendants,**

**JAMES R. MIKES and**
**SUNCOAST COUNTRY CLUBS, INC.,**

    **Intervening Defendants**
    **and Counter-Plaintiffs.**
_____/

**REPORT AND RECOMMENDATION**

THIS MATTER is before the court upon referral from the Honorable Steven D. Merryday for a Report and Recommendation on **Plaintiff's Motion to Dismiss Counterclaim of Intervenors, James R. Mikes and Suncoast Country Clubs, Inc.** (Doc. 27). By its motion, Plaintiff seeks dismissal pursuant to Fed. R. Civ. P. 12(b)(6) of both counts of the counterclaim brought by James R. Mikes and Suncoast Country Clubs, Inc., (hereinafter "Intervenors") on grounds that the claims are barred by Florida's nonjoinder statute, Fla. Stat. § 627.4136, and the claim for injunctive relief fails to state a cause of action. The Intervenors filed a response in opposition (Doc. 30), as well as supplemental authority (Doc. 35). A hearing on this matter was conducted on August 25, 2005.

I.

A.

A brief description of the parties and a summary of the chronology of events as gleaned from the Intervenors' counterclaim may be useful. United States Fire Insurance Company (hereinafter "U.S. Fire" or "Plaintiff") is an insurance company incorporated in the State of Delaware with a principal place of business in Morristown, New Jersey. Defendant, Freedom Village of Sun City Center, Ltd., was a Florida limited partnership; Defendant, Freedom Group, Inc., was a Florida corporation and the general partner of Freedom Village; and Frank Herold, a resident of Florida, was the president, director, and shareholder of Freedom Group.[1] The Intervenors are James R. Mikes, a Florida resident, and Suncoast Country Clubs, Inc., a Florida corporation. Mr. Mikes is the sole officer, director, and shareholder of Suncoast Country Clubs, Inc. Two other entities play a significant role in this matter: PHICO Insurance Company (hereinafter "PHICO"), an insurance company that insured the Freedom Defendants at all pertinent times between 1995 and 1998,[2] and the Florida Insurance Guaranty Association (hereinafter "FIGA"), which, pursuant to its statutory authority, assumed all duties and responsibilities with respect to PHICO in or about 2002.

From June 30, 1995, through June 30, 1998, the Freedom Defendants were insured

---

[1] It appears undisputed that Freedom Group merged with American Retirement Corporation (hereinafter "ARC"), a Tennessee corporation, in July 1998. It also appears undisputed that the three U.S. Fire policies at issue in this case inure to the benefit of ARC and a Tennessee limited partnership, ARC Freedom, LLC. No motion to substitute party has been filed, and I will refer to all the defendants as the "Freedom Defendants."

[2] PHICO was placed in receivership in August 2001. In February 2002, PHICO was declared insolvent and ordered to be liquidated by the Pennsylvania Insurance Commissioner pursuant to an Order of Liquidation by a judge of the Commonwealth Court of Pennsylvania. (Doc. 23, Ex. E).

2

under a comprehensive liability policy issued by PHICO under policy number HCL 4783. The PHICO policy provided coverage for personal injury liability and property damage liability in the amount of $1,000,000 per each occurrence and $3,000,000 aggregate. See (Doc. 1, ¶ 20).[3]  During the same period of time, the Freedom Defendants were also insured under commercial umbrella policies issued by U.S. Fire.  The three umbrella policies were issued annually beginning June 30, 1995, and inure to the benefit of the Freedom Defendants and their successors.  These policies likewise insured against personal injury and property damage.  See id., ¶¶ 28-30.  Each of the policies employed certain exclusions and limitations on coverage.

In or about August 1998, the Intervenors brought suit against the Freedom Defendants in the Circuit Court for Hillsborough County, Florida.  See Suncoast Country Clubs, Inc. & James R. Mikes v. Freedom Village of Sun City Center, Ltd., et al., Case No 98-CA-005802 (hereinafter "state tort action").  The complaint in that case has been amended a number of times, but presently the claims are for defamation and invasion of privacy stemming from statements and publications the Freedom Defendants made during the course of business dealings dating back to 1995.  See (Doc. 1, ¶¶ 10-17).  In or about September 1998, PHICO undertook to defend its insured under a reservation of rights.  In December 1998, an understanding was reached to the extent that the Intervenors and the Freedom Defendants agreed that any recovery would be limited to the available insurance of the Freedom

---

[3] The PHICO policy is referenced as exhibit C to the Complaint.  Although this exhibit, as well as other exhibits were filed in hard copy under separate cover with the Complaint, see docket entry dated 12/27/01, the court has been unable to locate them.  Plaintiff's office has graciously agreed to resubmit the exhibits.  However, this Order need not await receipt of the same as the parties do not appear to dispute on this motion the contents of the insurance policies which were contained in the exhibits and referenced herein.

3

Defendants. By Intervenors' allegations, the claims for which U.S. Fire is now called upon to provide coverage were not settled in mediation, and U.S. Fire's rights were not abrogated or impaired by the agreement. (Doc. 22 at 14).

In June 1999, the Intervenors and the Freedom Defendants entered into a "Settlement Agreement And Release Of Claims."[4] (Doc. 23, Ex. C). With certain express reservations, the Intervenors agreed that "they have no claims or causes of actions and will not raise or assert any claims or causes of action concerning Case Number 98-5802-F against any other persons or entities except PHICO . . ." Id. at 1. The reservations are set forth in detail at section V. Id. at 4-5. In essence, Intervenors agreed to limit their recovery in the state tort action to the amount of coverage available under the PHICO policy and to assume the risk of noncoverage. By the Intervenor's complaint, financial problems prompted PHICO to attempt to remove itself from the defense of the state tort action in October 2000. As noted above, PHICO went into receivership in August 2001 and liquidation in February 2002.[5] FIGA thereafter assumed its statutory responsibilities for claims in Florida.

In its motion to dismiss the counterclaim, U.S. Fire indicates that the Intervenors first learned of its umbrella policies in 2003.[6] In August 2004, Intervenors entered another

---

[4] The agreement addressed two pending suits between these parties, the state tort action and an earlier lawsuit then also pending before the Circuit Court for Hillsborough County, Florida, under Case No. 96-6517-I. The terms of the settlement of the 1996 case need not be addressed in detail.

[5] Intervenors contend that they perfected their claim against the PHICO estate in accordance with Pennsylvania law and the liquidation order, but the Freedom Defendants, FIGA and U.S. Fire did not.

[6] By the Intervenors' account, once U.S. Fire was brought into the fray, it moved aggressively to control the actions of FIGA in its handling of the state tort action and has thus prevented a settlement of the state tort action..

4

settlement agreement that purported to modify the terms of the 1999 settlement. In pertinent part, Intervenors agreed to limit their recovery in the state tort action to the coverage provided by PHICO, FIGA and U.S. Fire. Intervenors again assumed the risk of noncoverage.[7] See (Doc. 23, Ex. D at 2). In December 2004, U.S. Fire filed the instant action seeking a declaration of its rights and obligations under the three umbrella policies issued to the Freedom Defendants. In March 2005, the Intervenors moved to intervene in this action. (Doc. 12). U.S. Fire gave notice of its non-objection to the intervention (Doc. 14), and the motion to intervene was granted April 15, 2005, (Doc. 17). The Intervenors' Answer, Affirmative Defenses, and Counterclaim were filed May 11, 2005. (Docs. 22-23).

B.

In Count One of their counterclaim for declaratory relief,[8] Intervenors first allege that U.S. Fire's policies cover their claims for defamation and invasion of privacy, including their claim for punitive damages. This claim is essentially the opposite of the claim made by U.S. Fire. Because U.S. Fire denies coverage, it is alleged that there exists such a justiciable controversy over U.S. Fire's obligations under its policies with the Freedom Defendants that the court should resolve the coverage issue by declaratory judgment. More particularly,

---

[7] Intervenors allege that U.S. Fire was aware of the settlement discussions but chose not to participate in the settlement.

[8] By its Complaint, U.S. Fire maintains that there is an actual and justiciable controversy with the Freedom Defendants warranting the entry by this court of a declaratory judgment. More particularly, it seeks a declaration that no coverage exists under its policies with the Freedom Defendants for the claims asserted in the state tort action. Thus, it argues coverage is barred by reason of the four and one-half years delay in notice to it of the action and because its policies do not afford coverage for the claims or the claims are excluded from coverage. Further, it seeks a declaration that any coverage that does exist under its policies with the Freedom Defendants is excess coverage available only for damages which may be recovered in the state tort action that exceed PHICO's aggregate limits of $3 million dollars for each of the three policy years covered by its policies.

5

Intervenors seek a declaratory judgment that U.S. Fire has coverage liability in the state tort action for each occurrence for which the insured's liability exceeds the $1 million per occurrence limit under PHICO's policy; the defamation claim and invasion of privacy claim are separate occurrences under both the PHICO and U.S. Fire policies; and U.S. Fire has coverage liability for punitive damages, if awarded, against the Freedom Defendants. Additionally, Intervenors seek separate declarations that U.S. Fire may not impose or seek to impose any limitations or restrictions on FIGA's duty to promptly settle its claims, may not demand payment of costs of defense of the Intervenors' claims from the PHICO estate, and may not direct FIGA or its counsel to delay the resolution of the state tort action.

In Count Two, Intervenors again assert that U.S. Fire has abused its relationship with FIGA and has wrongly demanded FIGA provide a defense for the benefit of U.S. Fire. As relief, Intervenors seek a permanent injunction prohibiting U.S. Fire from imposing any limitation or restriction on the duty of FIGA to promptly settle Intervenors' claims, demanding payment of the costs of its defense of the Intervenors' claims on the estate of PHICO, and directing FIGA or its counsel to delay its resolution of the state tort action.[9]

II.

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is a motion attacking the legal sufficiency of a complaint. In deciding such a motion, the court must accept the facts pleaded as true and construe them in a light favorable to the plaintiff. Dacosta v. Nwachukwa, 304 F.3d 1045, 1047 (11th Cir. 2002); Bryant v. Avado

---

[9] At arguments, counsel for the Intervenors stated that this count seeks permanent injunctive relief in the event Intervenors succeed on the coverage dispute.

Brands, Inc., 187 F.3d 1271, 1273 n. 1 (11th Cir. 1999). Rule 12(b)(6) motions are disfavored and are rarely granted. Brooks v. Blue Cross & Blue Shield of Fla., Inc., 116 F.3d 1364, 1369 (11th Cir. 1997). Such a motion will only be granted if the court finds beyond a reasonable doubt that the plaintiff can prove no set of facts entitling it to the relief sought. Id. (citing Conley v. Gibson, 355 U.S. 41, 45-56 (1957)); Pataula Elec. Membership Corp. v. Whitworth, 951 F.2d 1238, 1240 (11th Cir. 1992). The test is not whether the complainants will ultimately prevail but whether they are entitled to offer evidence in support of the claims pleaded. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Davis v. Scherer, 468 U.S. 183, 188 (1984). Consideration of matters beyond the complaint is improper in the context of a motion to dismiss. Milburn v. United States, 734 F.2d 762, 765 (11th Cir. 1984). However, documents attached to pleadings may be considered without converting the motion into one for summary judgment. Fed. R. Civ. P. 10(c); Taylor v. Appleton, 30 F.3d 1365, 1368 (11th Cir. 1994).

In diversity actions, federal courts must apply the controlling substantive law of the state. Three Palms Pointe, Inc. v. State Farm Fire & Cas. Co., 362 F.3d 1317, 1318 (11th Cir. 2004). Florida's nonjoinder statute, § 627.4136, is considered substantive law. Allstate Ins. Co. v. Stanley, 282 F. Supp. 2d 1342, 1343 (M.D. Fla. 2003) (citing VanBibber v. Hartford Accident & Indem. Ins. Co., 439 So.2d 880, 882-83 (Fla. 1983) and All Underwriters v. Weisberg, 222 F.3d 1309, 1312 (11th Cir. 2000)). In pertinent part, section 627.4136 states:

(1)  It shall be a condition precedent to the accrual or maintenance of a cause of action against a liability insurer by a person not an insured under the terms of the liability insurance contract that such person shall first obtain a settlement or verdict against a person who is an insured under the terms of such policy for a cause of action which is covered by the policy.
(2)  . . . No person who is not an insured under the terms of a liability insurance policy shall have any interest in such policy, either as a third-

7

> party beneficiary or otherwise, prior to first obtaining a settlement or
> verdict against a person who is an insured under the terms of such
> policy for a cause of action which is covered by such policy.

Fla. Stat. § 627.4136(1), (2).  Thus, under Florida law applicable to this case, before a party other than the insured can bring suit against a liability insurer, the party must first obtain a settlement or a judgment against the insured.  See id.  Where the party has not yet obtained a settlement or judgment against the insured, dismissal (without prejudice) of the party's direct claim against the insurer is proper.  Hett v. Madison Mut. Ins. Co., 621 So.2d 764, 765-66 (Fla. 2d DCA 1993).  The legislative intent behind this statute is to ensure that the availability of insurance coverage does not influence the jury's determination of the insured's liability and damages.  See Canal Ins. Co. v. Reed, 666 So.2d 888, 891 (Fla. 1996); General Star Indem. Co. v. Boran Craig Barber Engel Const. Co., 895 So.2d 1136, 1138 (Fla. 2d DCA 2005).

### III.

#### A.

U.S. Fire first argues that Intervenors' counterclaim must be dismissed on the ground that it is barred by Florida's nonjoinder statute, Fla. Stat. § 627.4136.  Thus, it urges that dismissal is warranted under the plain language of the statute because the Intervenors are not insured by U.S. Fire and they have not obtained a judgment or settlement against its insured in the underlying state tort action.  In addition to a number of Florida court decisions, it cites to the decision of this court in Stanley and urges that it is "on all fours" factually with this dispute and is dispositive of the motion.[10]  Pursuant to Rule 12(b)(6), U. S. Fire also seeks

---

[10] U.S. Fire also cites Gregg v. Metro. Prop. & Liab. Ins. Co., 595 F. Supp. 529 (S.D. Fla. 1984); Universal Sec. Ins. Co. v. Spreadbury, 524 So.2d 1167 (Fla. 2d DCA 1988); Hett, 621 So.2d 764; and State Farm Fire & Cas. Co. v. Nail, 516 So.2d 1022 (Fla. 5th DCA 1987).

8

dismissal of the claim for injunctive relief, urging that the Intervenors have failed to state a claim upon which relief can be granted.

In response, the Intervenor cites six reasons the motion should be denied.[11] Intervenors maintain that they have standing to bring their action despite the nonjoinder statute because (1) any precondition to standing under the nonjoinder statute has been satisfied by the 1999 and 2004 settlement agreements with U.S. Fire's insured in the state tort action, (2) even if the precondition of the nonjoinder statute has not been met, the statute is not a bar to the FIGA and Pennsylvania statutory and liquidation issues they raise in the Counterclaim, (3) U.S. Fire is estopped from asserting the nonjoinder statute or any jurisdictional or standing defense as a result of inducing them to dismiss their state court declaratory judgment action, (4) U.S. Fire has waived any jurisdictional or standing defense to their Counterclaim by not objecting to their motion to intervene, (5) upon intervention they are entitled to bring any compulsory or permissive counterclaims, and (6) contrary to U.S. Fire's assertions, they seek permanent injunctive relief rather than preliminary injunctive relief, and only after the rights and obligations of the parties are declared.  As this claim for relief is adequately alleged, Intervenors urge that the motion should also be denied as to Count Two.

---

[11]Intervenors also assert that this motion is premature and may not be brought pursuant to Rule 12(b)(6).  Thus, they urge the purpose of such a motion is to test the facial sufficiency of a claim for relief, and, under the minimal standard of this rule, their pleadings are adequate to state a claim for relief.  However, Rule 12(b)(6) motions raise issues of law and are the appropriate vehicle to test whether a legally cognizable claim for relief exists.  See 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (3d ed. 2004); see also Marshall County Bd. of Educ. v. Marshall County Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993) ("Accordingly, the court may dismiss a complaint pursuant to [Rule 12(b)(6)] when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action.").

B.

Addressing the nonjoinder statute first, I agree with U.S. Fire that the agreement in 1999 between the Intervenors and the Freedom Defendants, as later amended and confirmed in 2004, are not "settlements" within the contemplation of Fla. Stat. § 627.4136 and that the Intervenors' counterclaim is barred absent a waiver or an estoppel or some independent basis to support the counterclaim.  See Stanley, 282 F. Supp. 2d at 1343-44.  By my consideration, while the term "settlement" may be broadly understood to cover any adjustment of the rights and obligations of parties to a dispute,[12] a review of Florida cases suggests that the agreements here reached between Intervenors and the Freedom Defendants are not the type adjustment of rights and obligations which would permit the joinder of U.S. Fire on this counterclaim.[13]  As stated above, by their "settlements" with the Freedom Defendants, Intervenors agreed to limit their recovery in the state tort action, if any, to the insurance proceeds available under the Freedom Defendants' policies with PHICO, and by the later agreement with U.S. Fire.  In effect, the agreements insulated the Freedom Defendants against any personal responsibility to pay damages awarded in the state tort action, if any, and Intervenors assumed the risk of no insurance coverage.  Among other issues, the agreement

---

[12]"Settlement," by definition, is "an act or process of adjusting or determining; . . .an adjustment between persons concerning their dealings or difficulties; . . . an agreement by which parties having disputed matters between them reach or ascertain what is coming from one to the other." Black's Law Dictionary (6th ed. 1990). "Settle" is "a word of equivocal meaning; meaning different things in different connections, and the particular sense in which it is used may be explained by the context of the surrounding circumstances." Id.

[13]Intervenors maintain that under the "plain meaning rule" of statutory interpretation, a settlement is a settlement regardless of contents. For this reason, and because their claims would violate neither the purpose nor policy behind the nonjoinder statute, they urge that this court should find that the preconditions to asserting a claim have been satisfied. However, as noted above, the "plain meaning" of "settlement" depends on the circumstances of its use. Here, other policy considerations dictate a different result.

10

did not resolve the matter of the Freedom Defendants' liability for the alleged torts, the amount of damages Intervenors suffered by reason of the alleged tortious conduct, or the scope of their insurance coverage. As I view the agreements, while they provided Intervenors a greater stake in the outcome of the coverage dispute, they did nothing to alter Intervenors' legal relationship with PHICO or U.S. Fire.

Intervenors are correct that the policy behind this statute is to "ensure jurors do not consider the existence of insurance coverage as a factor in determining liability." See Canal, 666 So.2d at 891. And, while it is arguable that this policy would not be seriously harmed by permitting this counterclaim, it appears most improbable that any Florida court would view the agreements reached here as such "settlements" as would permit the joinder of U.S. Fire or even the fact of its coverage to be made known to a jury in the state tort action.[14] Significantly, Florida courts have also stated that the nonjoinder statute "reflects the public policy that an injured person has no beneficial interest in a liability policy prior to obtaining a judgment against an insured under that policy." Nail, 516 So.2d at 1022.[15] Because the Freedom Defendants conceded neither liability nor damages in either agreement, the agreements cannot be found to have created a cognizable beneficial interest in the Intervenors to the policies of either PHICO or U.S. Fire such that a direct action against either or both is permissible. While this conclusion would appear to end the necessary discussion, Intervenors

---

[14] Under Florida law, it makes no difference that the action by Intervenors is, in part, one for declaratory relief on the matter of coverage. See Spreadbury, 524 So.2d at 1168; Tomlinson v. State Farm Fire & Cas. Co., 579 So.2d 211, 212 (Fla. 2d DCA 1991).

[15] "Nail and [the nonjoinder statute] prevent a person who is not an insured from making a liability insurer a party defendant before obtaining a judgment against the insured." Tindall v. Travelers Indem. Co., 613 So.2d 1369, 1370 (Fla. 2d DCA 1993).

11

argue that regardless of the nonjoinder statute, U.S. Fire has waived the right to assert it and is estopped to do so by agreeing to permit their intervention.

C.

Concerning the claim that U.S. Fire has waived the benefit of the nonjoinder statute, Intervenors maintain that U.S. Fire waived such right by not opposing their motion to intervene. Intervenors note that in compliance with Rule 24(c), they accompanied the motion with their proposed answer, affirmative defenses, and a counterclaim setting forth the precise claims that are now the subject of the motion to dismiss. In response to that motion, U.S. Fire filed a notice of non-objection and made no reservation of the right to challenge the counterclaim.

On the claim that U.S. Fire is estopped from now objecting to its counterclaim, Intervenors allege that they were induced to intervene in this action and to dismiss a pending declaratory judgment action in state court by U.S. Fire's offer not to object to the intervention *and their counterclaims*. In support, they quote language from a February 25, 2005, letter from U.S. Fire's counsel to Mr. Mikes. By this letter, after explaining why Mikes and Suncoast Country Clubs, Inc., were not indispensable parties to the coverage action and likely had no right to intervene, the letter states in pertinent part, "I believe the best way to proceed will be for you/Suncoast to file your motion to intervene and you can then let me know whether you are willing to dismiss the state court action in exchange for me agreeing not to oppose your intervention efforts." (Doc. 30 at 13). The letter does not make any express reference to U.S. Fire's position on any counterclaim which Intervenors might bring in this court should they move to intervene.

12

There is little case law on the matter of waiver in this context. However, a few reported decisions would appear to support an argument that U.S. Fire's notice of non-objection precludes it from objecting to the counterclaim on this motion given that it was placed on notice by the proposed counterclaim of Intervenors' intention to reassert the coverage claims in this court. See In re Troutman Enters., Inc., 286 F.3d 359, 363 (6th Cir. 2002) ("Intervention is a procedural hurdle, rather than a jurisdictional requirement, and as such, can be waived. The Trustee not only failed to lodge a timely intervention objection, he affirmatively consented [to the intervention]. Therefore, we conclude that the Trustee waived his objection."); see also Martindell v. Int'l Tel. & Tel. Corp., 594 F.2d 291, 294-95 (2d Cir. 1979); Exch. Nat'l Bank of Chicago v. Abramson, 45 F.R.D. 97, 101-102 (D. Minn. 1968).

The law on equitable estoppel is more developed. Under Florida law, equitable estoppel may prevent a party from asserting a position inconsistent with prior statements. However, "the doctrine of equitable estoppel should be applied with great caution and is applied only where to refuse its application would be virtually to sanction a fraud." Pelican Island Prop. Owners Ass'n v. Murphy, 554 So.2d 1179, 1181 (Fla. 2d DCA 1989). Estoppel will not lie unless the party seeking to assert it was mislead. Id. "The essence of estoppel is that a person should not be permitted to unfairly assert inconsistent positions." Id. The party raising estoppel must prove its elements by clear and convincing evidence. Watson Clinic, LLP v. Verzosa, 816 So.2d 832, 834 (Fla. 2d DCA 2002). As applied to this case, the elements Intervenors must establish are that: 1) U.S. Fire made a representation of material fact that is contrary to a position it now takes; 2) Intervenors relied upon the misrepresentation; and 3) Intervenors changed their position to their detriment. See id.

13

Upon consideration of all the circumstances, I conclude that U.S. Fire has not waived its nonjoinder objection to the Intervenors' counterclaim by not objecting to the intervention motion and it should not be estopped to raise the nonjoinder statute before this court. It is a matter of record in this case that at the time of the motion to intervene, U.S. Fire was seeking the dismissal of Mikes/Suncoast's declaratory judgment action then pending in state court pursuant to the Florida nonjoinder statute. (Doc. 12 at 3). Despite the pendency of that action, Intervenors concede that they agreed with U.S. Fire that this court was the proper venue for resolving the coverage issues. Id. At the time the motion to intervene was filed, Intervenors were well aware that this court had dismissed a similar counterclaim by reason of the nonjoinder statute in the Stanley case. Id. Despite Intervenors' claim to the contrary, on the proffered evidence, counsel for U.S. Fire did not represent that he would not raise the nonjoinder statute in this court as an inducement to their agreeing to dismiss the state declaratory judgment action. When considered in full, the Intervenors were neither mislead nor improperly induced to move to intervene. In the circumstances, Intervenors reasonably should have expected U.S. Fire to raise the same claims in this court that it previously had asserted in state court.[16] Furthermore, as noted in Troutman, a waiver to intervention does not

---

[16]As excuse for not expressly reserving the right to raise the nonjoinder statute in the notice of non-objection, counsel for U.S. Fire urges that he had no choice but to accede to the intervention motion in light of precedent in this district. Thus, he cites TIG Specialty Ins. Co. v. Financial Web.com, Inc., 208 F.R.D. 336 (M.D. Fla. 2002), where the court construed the "interest" necessary to support intervention in an insurance coverage dispute as a matter of right under Rule 24(a)(2) to include the economic interests of claimants in an underlying tort action to an insurance policy. This argument is less than persuasive. Apart from the fact that TIG is of no precedential value in this proceeding, a later decision by the Eleventh Circuit appears to call that decision into question. See Mt. Hawley Ins. Co. v. Sandy Lake Props., Inc., Case No. 05-12239, 2005 WL 2277724 (11th Cir. Sept. 20, 2005). Given his earlier position on the matter, a better explanation for why counsel did not object (and one which arguably supports the waiver argument) lies in the fact that Intervenors did dismiss their state court declaratory judgment action as counsel had demanded. See (Doc. 30 at 13). Here,

necessarily end the inquiry. As with any other party, an intervenor must have standing enabling the court to review its claims. Id. at 364. As set forth above, under the nonjoinder statute, Intervenors have not yet satisfied the preconditions permitting a claim against U.S. Fire. In sum, Intervenors have failed to establish that U.S. Fired waived its objection to the nonjoinder statute under the circumstances here.

Nor have Intervenors separately established the necessary elements of estoppel. Here they contend, "[U.S. Fire] must not be permitted to employ deceptive tactics to secure the benefit of a dismissal [by them] of the state court action and now attempt to avoid having the issues heard that [it] does not want heard." (Doc. 30 at 13). In my view, the argument fails for a lack of proof of misrepresentation or improper deception and because the Intevenors are no worse off now than they were before the state court. As they were in the state court, they are here challenged to overcome the hurdle posed by the nonjoinder statute before asserting their own declaratory judgment action against U.S. Fire. This is not a condition resulting from their detrimental reliance on some misrepresentation by U.S. Fire and it is pure speculation to suggest that they lost some benefit by agreeing to transfer the issues to this court. Thus, I conclude from the proffered evidence and arguments that Intervenors cannot demonstrate clearly or convincingly the elements of an estoppel.

D.

Intervenors also contend that at least a portion of their counterclaim for declaratory and injunctive relief is not barred by Fla. Stat. § 627.4136. As set forth above, Intervenors

---

counsel would have better served U.S. Fire had he reserved the right to dispute the counterclaim in this court by way of a motion or otherwise. See e.g. LMI Ins. Co. v. Precision Millwork Co., Inc., 1998 U.S. Dist. Lexis 15387 (E.D.N.C. 1998).

15

broadly maintain that U.S. Fire has caused FIGA, PHICO , and its Liquidator, the Insurance Commissioner of Pennsylvania, to violate chapter 631 of the Florida Statutes, the Pennsylvania liquidation statute, the Pennsylvania state court's liquidation order and Intervenors' rights under the Florida and United States constitutions.  As such, they seek a declaration that U.S. Fire may not 1) impose any condition or limitation on the statutory duty of FIGA to promptly settle all Intervenors' claims, 2) seek the reimbursement of the costs of its defense from the PHICO estate, and 3) direct FIGA to delay the resolution of the state tort action.  Essentially, Intervenors contend that they have a direct cause of action for declaratory and injunctive relief on these allegations uninhibited by the nonjoinder statute.  While this contention has a certain facile attraction, I have serious concerns with the appropriateness of the court entertaining such a claim for declaratory relief.

The remedy of declaratory relief under 28 U.S.C. § 2201 is left to the sound discretion of the court.  See Wilton v. Seven Falls Co., 515 U.S. 277, 288-90 (1995); Old Republic Union Ins. Co. v. Tillis Trucking Co., 124 F.3d 1258, 1260 (11th Cir. 1997).  In a given case, principles of abstention and comity may dictate that a district court should decline to exercise its jurisdiction over a declaratory judgment action.  Old Republic, 124 F.3d at 1261.  Here, Intervenors complain of certain legal positions taken by FIGA and U.S. Fire and the tactics employed by their counsel in defense of the ongoing state tort action and of the possibility that U.S. Fire may seek reimbursement of the costs of its representations from the PHICO estate at some point in the future.  Ultimately, what this claim anticipates (as claimed in Count Two) is an injunction from this court prohibiting counsel for U.S. Fire from engaging in such actions in the pending state tort action and before the Liquidator in Pennsylvania.  In

16

my view,[17] even if such disputes alleged by Intervenors raise justiciable issues, and I do not find that they do, a declaration or injunction of the sort sought here during the pendency of the state tort action would unreasonably and inappropriately interfere with the processes of the state court. I would decline to entertain this aspect of Intervenors' declaratory judgment action even if it isn't barred by the nonjoinder statute.

E.

Finally, U.S. Fire also seeks dismissal of the Intervenors' claim in Count Two for injunctive relief on grounds that it fails to allege a claim for injunctive relief. As is apparent from its argument, U.S. Fire views the claim as one for preliminary injunctive relief. In response, the Intervenors assert that Plaintiff has misrepresented the substance of their claim for injunctive relief. Rather than a claim for preliminary injunctive relief, which Plaintiff presupposes the claim to be, they seek permanent injunctive relief, and only in the event the court makes the favorable declarations regarding the liquidation and statutory issues as set forth in their first claim. In support, Intervenors point out that the count expressly states, "This is an action for injunctive relief and preliminary relief shall be requested by separate motion made pursuant to Federal Rule of Civil Procedure 65 and Middle District Rule 4.06." (Doc. 22 at 25).

As pleaded by the Intervenors, this claim is one for additional and further relief in the event they prevail on the second aspect of their claim for declaratory relief. Even if it is adequately plead, for the reasons set forth above, this claim should be dismissed as well.

---

[17] I note that this matter is not raised by counsel; nor have they had the opportunity to respond to these concerns.

17

IV.

In conclusion, it is RECOMMENDED that the court GRANT the **Plaintiff's Motion to Dismiss Counter-claim of Intervenors, James R. Mikes and Suncoast Country Clubs, Inc.** (Doc. 27).

Respectfully submitted this
28th day of October 2005.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within ten days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal and a de novo determination by a district judge. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; M.D. Fla. R. 6.02; see also Fed. R. Civ. P. 6; M.D. Fla. R. 4.20.

Copies furnished to:
The Honorable Steven D. Merryday, United States District Judge
Counsel of Record