## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**UNITED STATES FIRE**
**INSURANCE COMPANY,**

   **Plaintiff,**

**v.**              **Case No. 8:04-cv-2783-T-23TBM**

**JAMES R. MIKES and**
**SUNCOAST COUNTRY CLUBS, INC.,**

   **Defendants.**
_____/


## REPORT AND RECOMMENDATION

   THIS MATTER is before the court on referral by the Honorable Steven D. Merryday

for a Report and Recommendation on the parties' cross motions for summary judgment:

> (1)   **U.S. Fire's Motion for Summary Final Judgment** (Doc. 252) and
> Defendants' response (Doc. 278);
>
> (2)   **Motion for Partial Summary Judgment on the Insureds' Entitlement to
> Settle; That the Settlement Documents are Binding Upon U.S. Fire and
> Settlement is not a Breach of Cooperation** (Doc. 258) and Plaintiff's
> response (Doc. 273); and
>
> (3)   **Motion for Partial Summary Judgment that U.S. Fire Received Timely
> Notice of the Claim, and U.S. Fire's Late Notice Defense does not Void
> Coverage** (Doc. 259), Plaintiff's response (Doc. 276), and Defendants' reply
> (Doc. 322).

The parties have filed affidavits, excerpts of depositions, and other documentary evidence in

support of their positions. See (Docs. 133-35, 139, 239, 246-51, 253-55, 279-80, 329).  Oral

arguments on these and other matters were heard on May 17, 2007.[1]

---

   [1]Also before the court is Defendants' **Request That the Court Take Judicial Notice
of State Court Order Permitting Punitive Damage Claim** (Doc. 336) and Plaintiff's
response in opposition (Doc. 338).  Pursuant to Fed. R. Evid. 201, Defendants' request is

I.

In this action for declaratory relief, United States Fire Insurance Company ("U.S. Fire" or "Plaintiff") seeks a declaration that it is not liable for any portion of a settlement that was negotiated in the underlying state court action styled <u>Suncoast Country Clubs, Inc. and James R. Mikes v. Freedom Village of Sun City Center, Ltd., Freedom Group, Inc. and Frank Herold</u>, Case No. 98-5802 (the "<u>Suncoast</u> action").[2]  Pursuant to the terms of the settlement in that action, James R. Mikes and Suncoast Country Clubs, Inc., ("Mikes/SCC" or "Defendants") ultimately seek to recover from U.S. Fire the principal sum of $1,700,100 plus prejudgment interest in the amount of $1,492,093, calculated from March 13, 1996, for loss/damage suffered by Mikes/SCC at the hands of Freedom Village of Sun City Center, Ltd., Freedom Group, Inc., and Frank Herold (collectively "Freedom Defendants" or "the Insureds") under umbrella policies issued by U.S. Fire.

The historical and chronological facts underlying this case are largely undisputed and are as follows.  Mikes/SCC initiated the <u>Suncoast</u> action against the Freedom Defendants in August 1998.  The <u>Suncoast</u> action was amended numerous times, with the last operative complaint being the Eighth Amended Complaint.[3]  In the <u>Suncoast</u> Complaint, Mikes/SCC

---

granted.

[2]By its initial complaint, U.S. Fire sought declaratory relief as against the Freedom Defendants, urging there was no coverage due to the Freedom Defendants' five-year delay in notifying it of the <u>Suncoast</u> action and because the claims were not covered under the follow-form provisions of the policies or were otherwise excluded under the policies and any claims for punitive damages were barred.  <u>See</u> Compl. (Doc. 1).  As set forth below, the nature of the relief sought changed after James R. Mikes and Suncoast Country Clubs, Inc., were joined as party defendants and the <u>Suncoast</u> action was settled.

[3]A copy of the Eighth Amended Complaint from the <u>Suncoast</u> action ("<u>Suncoast</u> Complaint") is found at Doc. 139-4 through 139-13.

2

claimed that between August 25, 1995, and June 1997, the Freedom Defendants made numerous statements about Mikes and SCC that were defamatory and invaded Mikes' privacy. Suncoast Compl. (Doc. 139-6 at ¶¶ 105, 109).

Mikes claimed that these statements caused injury to his reputation and his business. In particular, Mikes claimed that as a result of certain statements made to his lender, GATX, the lender filed a foreclosure action against him. Suncoast Compl. (Doc. 139-9 at ¶ 232); Dep. Mikes (Doc. 231-15 at 3).[4]  The foreclosure action ultimately resulted in Mikes losing valuable development property and suffering other economic losses. Suncoast Compl. (Doc. 139-12 at ¶¶ 362, 390).  Mikes claimed that but for the defamatory and offensive statements, GATX never would have filed its foreclosure action against him, he would not have lost the development land, and he would have been able to realize millions of dollars in profits from developing that land.  Dep. Mikes (Doc. 231-15 at 3).  Mikes also claimed that once the foreclosure action was initiated in May 1996, he was required to incur legal fees and costs to defend such action and to devote substantially all his own time and effort to fighting that action.  Suncoast Compl. (Doc. 139-9 at ¶ 252); Dep. Mikes (Doc. 231-15 at 2, 8).  By this complaint, Mikes/SCC sought compensatory, consequential and punitive damages.  (Doc. 139-12 at 86-87).  In the claim for invading his privacy, Mikes sought identical general and special damages, as well as punitive damages, as had been alleged in Count I.  Id. at 90; (Doc 139-13 at 1-2).

At all times pertinent to the Suncoast action, the Freedom Defendants were insured under a primary liability policy #HCL 4783, issued by PHICO Insurance Company

---

[4]Mikes' May 19, 2006, deposition is found at Doc. 231-13 through 231-15.

("PHICO").  (Docs. 133, 134).[5]  The original policy covered the period of 6/30/95 to 6/30/96.  It was renewed for the period of 6/30/96 to 6/30/97 and then again for the period of 6/30/97 to 6/30/98.  During each policy year, the PHICO policy provided coverage for personal injury liability and property damage liability in the amount of $1,000,000 per each occurrence and $3,000,000 aggregate.  (Doc. 133-5 at 3).

Upon the filing of the Suncoast action, PHICO undertook the defense of the suit under a reservation of rights.  Aff. Kaestner[6] (Doc. 252-2 at 6, ¶ 15).  Thereafter, on October 10, 2000, PHICO denied coverage and withdrew from the Freedom Defendants' defense.  Id., ¶ 16.  The Freedom Defendants sued PHICO for declaratory relief and eventually obtained a judgment that PHICO was obligated to provide them with a defense in the Suncoast action.  See Dep. Bobo[7] (Doc. 255-3 at 19); State Court Order (Doc. 252-2 at 1).  Thereafter, PHICO continued to defend the Suncoast action until it became insolvent.

In February 2002, PHICO was placed into liquidation by the Pennsylvania Insurance Commissioner under the supervision of the Commonwealth of Pennsylvania.  As a result of PHICO's insolvency, the Florida Insurance Guaranty Association ("FIGA") assumed PHICO's duties and obligations with respect to the Suncoast action.  FIGA defended the action in its

---

[5]The PHICO policy is found at Docs. 133-2 through 133-9, and 134-2 through 134-11.

[6]Todd Kaestner is the executive vice president of ARC.  (Doc. 252-2 at 4).

[7]J. Allen Bobo was independent counsel to the Freedom Defendants in the Suncoast action.  The transcript of his deposition is found at Doc. 255-3.

entirety until it was settled.  Dep. Allen[8] (Doc. 255-2 at 8); Dep. Hauser[9] (Doc. 255-4 at 12, 13); Dep. Herold[10] (Doc. 255-5 at 9).

U.S. Fire insured the Freedom Defendants under commercial umbrella policies, issued annually beginning June 30, 1995.  See (Doc. 135).  It is agreed that the policies inured to the benefit of the Freedom Defendants and their successors.  These policies insured against personal injury and property damage in the amount of $10,000,000 per each occurrence and $10,000,000 aggregate.  Each of the policies employed certain exclusions and limitations on coverage.[11]  According to U.S. Fire, it received *actual* notice of the Suncoast action in May 2003.  (Doc. 252 at 3, n. 2).  However, as discovery in the case disclosed, Jones & Hawkins Insurance, U.S. Fire's agent, received a timely notice of the suit and a copy of the complaint in the Suncoast action in August 1998.  See (Doc. 183-23, ¶¶ 2, 3).

In September 2004, U.S. Fire entered into a Joint Defense and Confidentiality Agreement with the Freedom Defendants.  On behalf of U.S. Fire, the agreement was signed by Gary Khutorsky, Esquire.  (Doc. 252-4).  Mr. Khutorsky's firm, Stephens, Lynn, Klein, La Cava, Hoffman & Puya, P.A., maintains that it has acted solely as coverage counsel for U.S.

---

[8]Samuel O. Allen, an assistant claims manager, testified as the corporate representative of FIGA.  The transcript of his deposition is found at Doc. 255-2.

[9]Helen Hauser, Esq., was retained by FIGA to represent the Freedom Defendants in the Suncoast action.  The transcript of her deposition is found at Doc. 255-4.

[10]Frank Herold was the individually-named defendant in the Suncoast action.  He was the president, director, and shareholder of the Freedom Group, Inc.  The transcript of his March 17, 2006, deposition is found at Doc. 255-5.  The transcript of his September 7, 2005, deposition is found at Doc. 247.

[11]Because the Suncoast settlement set the date of the occurrence and loss/damage to Mikes/SCC at March 13, 1996, see (Doc. 252-5 at 1), only U.S. Fire's policy issued in 1995 is implicated in this declaratory judgment suit.

Fire at all times in this matter.  U.S. Fire did not provide separate counsel for the Freedom Defendants.

In December 2004, U.S. Fire initiated the present declaratory action.

On or about November 30, 2005, Mikes/SCC and Herold entered into a settlement agreement in which all claims in the Suncoast action were resolved as between Mikes/SCC and the Freedom Defendants.  At that time, neither FIGA nor U.S. Fire consented to the settlement.[12]

The Suncoast settlement was memorialized in two settlement documents – a "Stipulation and Settlement Agreement as to Hillsborough County Circuit Court Case No. 98-5802" ("stipulation" or "settlement") and a "Statement of Good Faith Settlement Understandings" ("statement").  (Doc. 252-5, 252-6).  According to the stipulation, the total amount of the settlement was as follows:

> In Case No. 98-5802, HEROLD agrees that a settlement shall be made on his behalf for the sum of $3,000,000 (Three Million and no/100 dollars), plus prejudgment/settlement interest of $2,632,950 (Two Million Six Hundred Thirty-two Thousand Nine Hundred Fifty and no/100 dollars) from March 13, 1996 (agreed to be the date of the occurrence and loss/damage suffered by MIKES and SCC) at the statutory rate (being a total of 87.765% from March 13, 1996 through the effective date hereof), for a total settlement amount of $5,632,950 (Five Million Six Hundred Thirty-two Thousand Nine Hundred Fifty and no/100 dollars) (the "Total Settlement Amount") to MIKES and SCC.[13]

---

[12]FIGA consented to the settlement on May 17, 2006, pursuant to a Stipulation for Settlement, which modified the terms as to the amount of settlement FIGA would pay and to whom.  (Doc. 187-2).

[13]The stipulation allocated $299,900 plus prejudgment interest of $263,207 to SCC and $2,700,100 plus prejudgment interest of $2,369,743 to MIKES.  The statement purported to allocate the amounts recoverable from FIGA, PHICO, and U.S. Fire.  (Doc. 252-6 at 2).

(Doc. 252-5 at 1).  The stipulation provides that "the parties intend that the Total Settlement Amount is enforceable as a final adjudication of the claims in Case No. 98-5802.  The intent of this Settlement is to confirm a legally binding obligation by Herold to pay the Total Settlement Amount to the extent of the insurance coverage provided by PHICO and U.S. Fire and statutory recovery from FIGA."  Id. at 1-2.  At the same time, the stipulation provided that it "shall not be reduced to judgment, it does not create or establish any encumbrance or lien, and no one will execute against or attempt to collect said amount directly from any Defendant," and that it "shall never for any purpose be considered as an admission of wrongdoing or liability on the part of Herold or any other party."  (Doc. 252-5 at 1, 3).

In consideration for Herold's agreement to settle, the stipulation contemplated that the Suncoast action be dismissed with prejudice as against the Freedom Defendants, and that:

> Plaintiffs shall give full general mutual release (except as limited herein) to Defendants, and all their agents, attorneys, indemnitors, insurers (specifically excluding any release of FIGA, PHICO, and U.S. FIRE), . . . , EXCEPT with respect to the Total Settlement Amount as specifically reserved herein, for all matters which were or could have been raised against the Defendants (but not with respect to FIGA, PHICO or U.S. FIRE) in [the Suncoast action] or in Middle Case No. 8:04-CV-2783-T-23 TBM, and . . . .  It is intended that with respect to the Total Settlement Amount, there is no release and this Settlement Agreement is a covenant not to execute or pursue Defendants except as provided herein.

Id. at 2.  It also reiterated that the release did not pertain to FIGA, PHICO, or U.S. FIRE for any "contractual, statutory and common law duties and obligations that [they owe] the [parties], if any;" and "any action or right of action, whether direct or derivative and whether by contract, statute or based on common law, that Defendant may have against FIGA, PHICO or U.S. FIRE as a result of the refusal of FIGA, PHICO or U.S. FIRE to settle or participate in settlement or pay all or any portion of the Total Settlement Amount as specified in this

Settlement Agreement, if any." Id. at 2-3. The settlement purported to set forth the "sole and exclusive recourse that Plaintiffs shall have against any Defendants," and the only entities Mikes/SCC may seek to collect from are FIGA, PHICO and U.S. FIRE. Id. at 3. It also included an assignment of rights by which the Freedom Defendants assigned to Mikes/SCC their "right, title, interest and standing to enforce the coverage duties and obligations owed Defendants by FIGA, PHICO and U.S. Fire, whether presently existing or already accrued or which may hereafter accrue, . . . " Id. at 4.

The settlement also contemplated that the parties would submit the executed agreement to the presiding judge in the state court action for approval, a finding that the settlement was enforceable, and an order dismissing the action as against the Defendants but reserving the right to join FIGA and/or U.S. Fire. Id. at 2. As noted below, the settlement was approved by a state circuit court judge. See infra note 19.

U.S. Fire amended its complaint in February 2006. By its Amended Complaint, U.S. Fire seeks a declaration that it is not liable for any portion of the Suncoast settlement under any of the three umbrella policies that it issued to the Freedom Defendants. (Doc. 127).

II.

The court shall grant summary judgment for the moving party only when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The court may look to "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits," in determining whether summary judgment is appropriate. Fed. R. Civ. P. 56(c). The movant bears the exacting burden of demonstrating that there is no dispute as to any material fact in the case.

8

See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 918 (11th Cir. 1993).

Once the moving party satisfies its burden, the burden shifts to the non-moving party to establish the existence of a genuine issue of material fact.  See Celotex, 477 U.S. at 324; Howard v. BP Oil Co., 32 F.3d 520, 524 (11th Cir. 1994).  The non-movant must designate specific facts showing a genuine issue for trial beyond mere allegations or the party's perception.  See Perkins v. Sch. Bd. of Pinellas County, 902 F. Supp. 1503, 1505 (M.D. Fla. 1995).  It must set forth, by affidavit or other appropriate means, specific facts showing that there is a genuine issue for trial.  See Fed. R. Civ. P. 56(e).

When deciding a motion for summary judgment, "[i]t is not part of the court's function . . . to decide issues of material fact, but rather determine whether such issues exist to be tried . . ." and "[t]he court must avoid weighing conflicting evidence or making credibility determinations."  Hairston, 9 F.3d at 919 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986)).  The only determination for the court in a summary judgment proceeding is whether there exists genuine and material issues of fact to be tried.  See id. at 921; see also Little v. United Techs., Carrier Transicold Div., 103 F.3d 956, 959 (11th Cir. 1997).  All the evidence and inferences from the underlying facts must be viewed in the light most favorable to the nonmoving party.  See Combs v. Plantation Patterns, 106 F.3d 1519, 1526 (11th Cir. 1997).


III.

On the instant motions, U.S. Fire argues it is not liable for any portion of the Suncoast settlement because the settlement does not constitute "damages" that the Freedom Defendants are "legally obligated to pay" according to the plain terms of its policy and controlling law.

Alternatively, U.S. Fire argues that its coverage was vitiated because the Freedom Defendants breached the conditions of coverage by entering into the settlement without U.S. Fire's consent and while being provided with a full defense.  (Doc. 252).  Conversely, Mikes/SCC contend that the Freedom Defendants were authorized to settle the Suncoast action and transfer or assign to Mikes/SCC their rights under the U.S. Fire policy because U.S. Fire breached its obligations under the insurance contract by repeatedly denying coverage and/or wrongly refusing to defend in the state court action.  Thus, Mikes/SCC urge that U.S. Fire is bound by the terms of the settlement and waived it s right to challenge the issues therein resolved.  (Docs. 258, 278).[14]

## A.

The parties agree that Florida law governs the resolution of the issues raised by the parties in this diversity case.[15]  Three Palms Pointe, Inc. v. State Farm Fire & Cas. Co., 362

---

[14]Another issue was raised in **Defendants' Motion for Partial Summary Judgment that U.S. Fire Received Timely Notice of the Claim, and U.S. Fire's Late Notice Defense does not Void Coverage** (Doc. 259).  However, U.S. Fire has since withdrawn its defense of late notice, see (Doc. 192), and counsel for U.S. Fire stipulated at the hearing that the defense was no longer being asserted.  Thus, I find that there is no justiciable issue remaining on that particular motion (Doc. 259).  Contrary to the arguments of Mikes/SCC, I also find that the facts surrounding U.S. Fire's assertion that it did not receive *actual* notice of the Suncoast action until 2003 are historically relevant and need not be stricken.

[15]In diversity cases arising under Florida law, a federal court is bound by the law articulated by the Florida Supreme Court.  Allstate Ins. Co. v. Travers, 703 F. Supp. 911, 914 (N.D. Fla. 1988).  If the Florida Supreme Court has not spoken, Florida District Court of Appeals decisions control, absent persuasive indication that the state's highest court would rule otherwise on the issue.  Id. at 914-15; see also Blanchard v. State Farm Mut. Auto. Ins. Co., 903 F.2d 1398, 1399 (11th Cir. 1990).  If the cases are split, the federal court should apply the rule representing the overwhelming weight of authority.  Allstate, 703 F. Supp. at 914.  When there is no authority, the court must make an educated guess as to how a Florida court would decide.  See Trail Builders Supply Co. v. Reagan, 409 F.2d 1059, 1061 (5th Cir. 1969).  Federal district courts do not have authority to certify questions to the Florida Supreme Court.  See Fla. Const. Art. 5, § 3(b)(6); Fla. R. App. P. 9.150(a).

F.3d 1317, 1318 (11th Cir. 2004); <u>Davis v. Nat'l Med. Enters.</u>, 253 F.3d 1314, 1319 n.6 (11th Cir. 2001).  Under Florida law, insurance contracts are to be construed in a manner that is "reasonable, practical, sensible, and just." <u>Doctors Co. v. Health Mgmt. Assocs., Inc.</u>, 943 So.2d 807, 809 (Fla. Dist. Ct. App. 2006) (quoting <u>Gen. Star Indem. Co. v. W. Fla. Vill. Inn, Inc.</u>, 874 So.2d 26, 29 (Fla. Dist. Ct. App. 2004)).  Terms used in a policy are to be given their plain and ordinary meaning and read in light of the skill and experience of ordinary people. <u>Bethel v. Sec. Nat'l Ins. Co.</u>, 949 So.2d 219, 222 (Fla. Dist. Ct. App. 2006); <u>Lindheimer v. St. Paul Fire & Marine Ins. Co.</u>, 643 So.2d 636, 638 (Fla. Dist. Ct. App. 1994).  Insurance policies will not be construed to reach an absurd result. <u>Deni Assocs. of Fla. v. State Farm Fire & Cas. Ins. Co.</u>, 711 So.2d 1135, 1140 (Fla. 1998) (citing <u>Travelers Indem. Co. v. Milgen Dev., Inc.</u>, 297 So.2d 845 (Fla. Dist. Ct. App. 1974)).

Provisions excluding or limiting the insurer's liability are construed more strictly than provisions that provide coverage. <u>Doctors Co.</u>, 943 So.2d at 809; <u>Purrelli v. State Farm Fire & Cas. Co.</u>, 698 So.2d 618, 620 (Fla. Dist. Ct. App. 1997).  If the provisions that limit or exclude liability are reasonably susceptible to more than one reasonable meaning, they are ambiguous and to be construed in favor of the insured. <u>Swire Pac. Holdings, Inc. v. Zurich Ins. Co.</u>, 845 So.2d 161, 166 (Fla. 2003); <u>Doctors Co.</u>, 943 So.2d at 809; <u>Deni</u>, 711 So.2d at 1138.  This rule, however, applies only when a genuine inconsistency, uncertainty, or ambiguity in meaning remains after resort to the ordinary rules of construction. <u>Swire Pac. Holdings, Inc.</u>, 845 So.2d at 165.  In construing an insurance policy, courts are to read the policy as a whole, endeavoring to give contract provisions their full meaning and operative effect. <u>Auto-Owners Ins. Co. v. Anderson</u>, 756 So.2d 29, 34 (Fla. 2000).  A single policy provision should be construed according to the entirety of its terms as set forth in the policy and not in isolation. <u>Swire Pac.</u>

Holdings, Inc., 845 So.2d at 166.  The lack of a definition of an operative term does not, by itself, create ambiguity.  Id.; State Farm Fire & Cas. Co. v. CTC Dev. Corp., 720 So.2d 1072, 1076 (Fla. 1998).

Settlement agreements are interpreted in accordance with Florida contract law as well. See Tiny Treasures Acad. & Get Well Ctr., Inc. v. Stirling Place, Inc., 916 So.2d 991, 993 (Fla. Dist. Ct. App. 2005) (providing that, "Settlement agreements are interpreted and governed by the law of contracts") (quoting Zimmerman v. Olympus Fid. Trust, LLC, 847 So.2d 1101, 1102 (Fla. Dist. Ct. App. 2003)); Schwartz v. Fla. Bd. of Regents, 807 F.2d 901, 905 (11th Cir. 1987) (providing that, "a settlement agreement is a contract and, as such, its construction and enforcement are governed by principles of Florida's general contract law.").

## B.

The pertinent portions of U.S. Fire's policy are set forth herein as follows:

### I.      COVERAGE

A.     We will pay on behalf of the "Insured" those sums in the excess of the "Retained Limit" which the "Insured" by reason of liability imposed by law, . . . shall become legally obligated to pay as damages for:

      1.  "Bodily Injury" or "Property Damage" . . .

      2.  "Personal Injury" . . . or

      3.  "Advertising Injury" . . .

(Doc. 135-3 at 9).

### II.     DEFENSE SETTLEMENT

A.     We shall have the right and duty to defend any "Claim" or "Suit" seeking damages, . . . , covered by the terms and conditions of this policy, even if the allegations are groundless, false or fraudulent, when:

12

      1.  the applicable limits of "Underlying Insurance" and "Other Insurance" have been exhausted by payments; or

      2.  damages, . . . , are sought  which are not covered by the terms and conditions of "Underlying Insurance" or "Other Insurance. "

***

D.     In those circumstances where paragraph A. above does not apply, we will not be obligated to investigate, negotiate, settle, of defend any "Claim" or "Suit" brought against, or applicable to, any Insured."

      However, we will have the right and opportunity to associate and participate with you or any provider of "Underlying Insurance" or "Other Insurance" in the investigation, negotiation, settlement, or defense of any "Claim" or "Suit" reasonably likely to involve us under this policy. . . .

(Doc. 135-3 at 10).

Under "**CONDITIONS,**" the policy provides further that:

**G**.     **DUTIES IN THE EVENT OF OCCURRENCE, CLAIM OR SUIT**

      4.  No "Insureds" will, except at their own cost, voluntarily make a payment, assume any obligation or incur any expense, other than for first aid, without our consent.

***

**J**.     **LOSS PAYMENTS**

      1.  We are liable for payment under this policy for any one "Occurrence" only when the amount of the "Retained Limit" with respect to such "Occurrence" has been paid.

      2.  If we are obliged to Indemnify the "Insured" for any payment of judgments or settlements, the "Insured" must make a written claim within 12 months of:

      a.  actually paying any amount in excess of the "Retained Limit," or
      b.  the "Insured's" liability being made certain by:
          (I)  a final judgment against the "Insured," or
          (ii)  the written agreement of the "Insured," the claimant and us.

(Doc. 135-4 at 6).

**Q**.     **TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THE POLICY**.
     Your rights and duties under this policy may not be transferred without out prior written consent, . . .

13

(Doc. 135-4 at 8).

    The policy also contained a Florida Amendatory Endorsement, which provides:

    It is agreed that with respect to insurance afforded in the State of Florida, this policy is amended as follows:

                                          \*\*\*

    2.  Action Against Company.  No action shall lie against us unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this policy, nor until the amount of your obligation to pay shall have been finally determined either by judgment against you after actual trial, or by your written agreement, the claimant and us.

(Doc. 135-2 at 10).

C.

    By its first argument, U.S. Fire urges that the <u>Suncoast</u> settlement does not impose upon the Freedom Defendants a "legal obligation" to pay damages and therefore its indemnity obligation under its policy is not triggered.  In support, U.S. Fire points to the policy language stating that its obligation to indemnify the insured arises only with respect to sums which the insured shall become "legally obligated to pay as damages" and only after the insured's liability has been made certain by a final judgment or by a written agreement between the insured, the claimant, and itself.[16]  By its argument, since the settlement agreement provides for no judgment, stipulates that no lien or encumbrance is created or established, and does not include an admission of wrongdoing or liability by any of the Freedom Defendants, neither Herold nor the other Freedom Defendants are obligated to do anything and the settlement

---

[16]At arguments, U.S. Fire suggested that it is unnecessary for the court to consider this latter language and the issue of the Florida Amendatory Endorsement raised by Defendants (see below) because Herold is not obligated to pay damages and, if he is not obligated to pay damages, Mikes/SCC are precluded from collecting those sums from U.S. Fire.  However, it urges that even under this endorsement, there is no coverage for a settlement entered into without its agreement and an insured may not seek to enforce one.

14

agreement is merely a statement as to the value of the case, nothing else.  It urges that under

Florida law, there can be no obligation to indemnify the insureds because there is no

corresponding legal liability for damages on the part of the insureds.  In support of its

arguments, U.S. Fire relies on <u>Rosen v. Fla. Ins. Guar. Ass'n</u>, 802 So.2d 291 (Fla. 2001); <u>Fid.</u>

<u>& Cas. Co. of N.Y. v. Cope</u>, 462 So.2d 459 (Fla. 1985), <u>Fla. Physicians Ins. Reciprocal v.</u>

<u>Avila</u>, 473 So.2d 756 (Fla. Dist. Ct. App. 1985), and <u>Clement v. Prudential Prop. & Cas. Ins.</u>

<u>Co.</u>, 790 F.2d 1545 (11th Cir. 1986).

In addition to urging that the purported legal obligation to pay under the settlement is

illusory, U.S. Fire argues that the settlement itself effects a full release of the insureds on all

the underlying claims such that Mikes/SCC can have no claim as against it.  Citing the

settlement agreement in <u>Clement</u>, U.S. Fire urges that it is functionally indistinguishable from

the agreement in this matter - in both, the insureds agreed on an amount of the claim, the

insureds in turn were given a full release from liability, and the claimant was assigned the

rights to pursue the insurer for the stipulated damages.  As in <u>Clement,</u> U.S. Fire urges that the

rule in <u>Cope</u> dictates that Mikes/SCC has no action against it because its insureds are not

obligated to pay.  While U.S. Fire acknowledges that the settlement agreement was intended to

be "enforceable as a final adjudication of the claims" and to "confirm a legally binding

obligation by Herold," it urges that those statements do not alter the true nature of the

agreement, "just because the parties agreed to call an orange an apple, does not make that

orange an apple.  A release by any other name is still a release."  (Doc. 252 at 9-14).

In response, Mikes/SCC first argue that the policy language, "legally obligated to pay

as damages," is ambiguous because "damages" and "legally obligated" are not defined and the

phrase "by reason of liability imposed by law" does not cure the ambiguity.[17]  As a result,

Mikes/SCC urge that the language must be construed in favor of providing coverage.  They

also argue that the policy does not require a judgment when there is a settlement, the insureds

to have paid damages, or that the insureds have the resources to pay damages.  Mikes/SCC

contend an action may be maintained against U.S. Fire despite the fact that it did not participate

in the settlement because the policy language has been superseded by the Florida Amendatory

Endorsement, which provides that no action shall lie against U.S. Fire unless the amount of the

insured's obligation to pay has been "determined by judgment after trial **or by written

agreement**, the claimant and us." (emphasis added by Mikes/SCC).  By their reading of the

provision, the settlement is an "agreement" under this endorsement and the agreement need not

be signed or consented to by U.S. Fire.  They urge that any drafting error in failing to include

modifiers such as "between" or "among" in this provision must be construed against U.S. Fire.

Citing <u>Rosen</u> and <u>Paulucci v. Gen. Dynamics Corp.</u>, 842 So.2d 797 (Fla. 2003), Mikes/SCC

urge further that the settlement agreement, as approved by the state court, essentially is an

agreement not to sue and creates an enforceable legal obligation against the insureds.  (Doc.

278 at 11-17).

As for U.S. Fire's argument that the settlement creates no legal obligation in the

insureds to pay damages, I conclude otherwise.[18]  First, it is worth noting that by its plain

---

[17]Initially, Mikes/SCC urged that U.S. Fire has misrepresented certain material facts in its argument.  These objections were addressed at the hearing and most of them were overruled.  I did agree not to consider certain comments at depositions by Herold or his counsel, Ms. Hauser, related to their view of the import of the agreement.  However, to the extent that this argument may suggest a dispute in material facts, that is not the case.

[18]I find no merit in Mikes/SCC's argument that this portion of the coverage language is ambiguous.

terms, the coverage language in U.S. Fire's policy does not require a judgment to trigger its duty to indemnify.  Further, both its original policy form and the Florida Amendatory Endorsement contemplate coverage in an action where the insured's liability has been made certain either by a judgment or by a written agreement.  I recognize that the Florida cases cited to by the parties all involved settlements that included provisions for a judgment.  However, I do not read that circumstance as controlling on the issue.  While clearly a consent judgment may create an enforceable obligation to pay, I cannot conclude that it is the only vehicle available for effectively resolving such disputes and achieving an enforceable settlement.  As indicated in <u>Rosen</u>, the intent of the parties is highly significant to understanding these settlements.  Here, Herold otherwise agreed to a "final adjudication" of the claims in the <u>Suncoast</u> action by which he was obliged to pay Mikes/SCC some $3,000,000 plus interest to the extent he had insurance coverage for the same.  Setting aside the issues of whether the agreement could trigger U.S. Fire's indemnity obligation in circumstances where it did not participate in or consent to the settlement and whether the settlement effected a release or was a mere agreement not to sue, the agreement sets forth the parties' intent to confirm Herold's obligation to pay the Total Settlement Amount to the extent of the Freedom Defendants' insurance coverage.  In exchange, Mikes/SCC assumed the right (and the risk) to pursue the Freedom Defendants' available insurance coverage, if any, as well as other claims that might be available against the insurers.  In principle, I see no reason why the <u>Suncoast</u> parties could not structure an enforceable settlement in this fashion, even absent a judgment.  Significantly, neither did the state court judge who approved the settlement in this case.[19]  I find that the lack

---

[19]By order of March 8, 2006, as amended after rehearing April 7, 2006, the state trial judge approved the settlement and accepted jurisdiction to enforce the settlement agreements "in the manner consistent with prevailing Florida law;" granted Mikes/SCC permission to file

of a judgment, lien or encumbrance is not dispositive of whether the settlement effected an enforceable obligation in Herold to pay damages to the extent of the available insurance coverage.  Apart from the issues reserved for further discussion, I conclude that the agreement, as approved by the state court, otherwise creates an enforceable obligation on Herold's part to pay damages and is in the nature of an agreement not to sue.

As for U.S. Fire's argument that there can be no enforceable obligation on its part to pay damages because its insureds were released from liability, it presents an undecided issue of Florida law.  Under Florida law, "[a] release is an outright cancellation or discharge of the entire obligation as to one or all of the alleged joint wrongdoers.  A covenant not to sue recognizes that the obligation or liability continues but the injured party agrees not to assert any rights grounded thereon against a particular covenantee." Rosen, 802 So.2d at 295 (quoting Atlantic Coast Line R.R. v. Boone, 85 So.2d 834, 843 (Fla. 1956)).  In bad faith litigation, Florida courts hold that the release of a tortfeasor by an injured party relieves the insurer of its legal obligation to pay damages absent a prior assignment of claims.  See Cope, 462 So.2d at 459.  In Rosen, a case not involving a bad faith claim, the court acknowledged the Cope rule and stated that, "the key to whether Cope applies is whether the 'underlying claim' continues to exist after the settlement agreement.  Rosen, 802 So.2d at 297 (citing Cunningham v. Std. Guar. Ins. Co., 630 So.2d 179, 180 (Fla. 1994)).

Arguably, in the present circumstances, the settlement released the Freedom Defendants such that the underlying claims were extinguished and no action can lie against

---

a Supplemental Complaint seeking to join U.S. Fire and FIGA pursuant to Fla. Stat. § 626.4136; authorized Mikes/SCC to pursue all rights, remedies, recourse, and causes of action assigned under the settlement by Freedom Defendants; and, in effect, directed the dismissal of the Freedom Defendants as parties in that cause.  See (Doc. 278-4) (3/8/06 order); Case No. 8:06-cv-1238-T-23TBM (Doc. 5-5) (4/7/06 order).

U.S. Fire.  See Rosen, 802 So.2d at 1297-98; Cope, 462 So.2d at 459.  However, as the Rosen court indicated, the parties' intent is of significance to the matter of whether a release or something less has been granted.  See Rosen, 802 So.2d at 1295.  Here, the parties to the settlement evidenced an intent that the claims survive, at least to the extent of the agreed sum of damages and Mikes/SCC's right to step into the Freedom Defendants' shoes and pursue recovery from U.S. Fire.  I am inclined to conclude that if the intent of the parties is controlling, the simultaneous assignment of rights to Mikes/SCC avoids the rule in Cope and they may, in these circumstances, pursue the recovery of their damages.  However, whether this is still the proper inquiry, and if so, how it is appropriately answered, is not settled under Florida law.  See Toomey v. Wachovia Ins. Servs. Inc., 450 F.3d 1225 (11th Cir. 2006).

In Toomey, the court was confronted with the similar issue of whether the district court erred in permitting Toomey to pursue a breach of fiduciary duty claim against a third-party insurer, Wachovia, where the claims in the underlying action between Toomey against the insured, IMC, resulted in a settlement agreement that contained both an assignment of causes of action to Toomey as against Wachovia and an immediate release of the underlying claims as against IMC.  See Toomey, 450 F.3d at 1229-30.  Recognizing a "substantial doubt" as to how the issue before it would be resolved under Florida law, the Eleventh Circuit certified the question to the Florida Supreme Court.  Id. at 1231.  To date, the certified question has not been answered.

Thus, at this point, insofar as U.S. Fire argues that the settlement operated as a release of all claims against the insureds such that Cope dictates that no action may be maintained against it, the decision is better left until after the Florida Supreme Court answers the questions certified in Toomey.

19

D.

Next, U.S. Fire argues that any coverage that might have existed was vitiated when the Freedom Defendants breached the express conditions of the policy by entering into the settlement agreement with Mikes/SCC without its consent and while being afforded a full defense by FIGA in the <u>Suncoast</u> action.  By its argument, the policy prohibited the insureds from assuming any obligation without its consent and from transferring their rights under the policy without its prior written consent and the Freedom Defendants did both.  Further, the policy conditioned U.S. Fire's indemnity obligation upon the establishment of the insureds' liability either by a judgment after trial or by a written agreement between the insured, the claimant *and* U.S. Fire.  (Doc. 252 at 15).  Relying on <u>Am. Reliance Ins. Co. v. Perez</u>, 712 So.2d 1211 (Fla. Dist. Ct. App. 1998), <u>United Nat'l Ins. Co. v. Jacobs</u>, 754 F. Supp. 865 (M.D. Fla. 1990), <u>First Am. Title Ins. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh</u>, 695 So.2d 475 (Fla. Dist. Ct. App. 1997), <u>Philadelphia Indem. Ins. Co. v. Kohne</u>, 294 F. Supp. 2d 1319 (M.D. Fla. 2003) ("Kohne I"), and <u>Philadelphia Indem. Ins. Co. v. Kohne</u>, 2006 WL 1390415 (11th Cir. May 22, 2006) (unpublished) ("Kohne II"), U.S. Fire submits it is well-settled that coverage is barred where the insured, while being defended, enters into a settlement with the claimant without the insurer's consent.  Anticipating Mikes/SCC's argument, it urges that the Freedom Defendants' decision to settle the case from underneath FIGA and U.S. Fire was unwarranted given the insurers' lack of consent and the fact that FIGA defended them at all times.  U.S. Fire denies that it denied coverage or wrongly declined to defend the Freedom Defendants (because it was never asked to defend them nor was it required to do so).  (Doc. 252 at 14-20).

In response and by their motion for partial summary judgment, Mikes/SCC argue that the Freedom Defendants did not breach their policy with U.S. Fire by entering into the settlement agreement with Mikes/SCC or by assigning and/or transferring their rights under the policy to Mikes/SCC. Rather, they urge that U.S. Fire breached the policy by denying coverage on at least eleven separate occasions and, in light of this breach, the Freedom Defendants were authorized, as a matter of Florida law, to enter into the settlement agreement.[20] Relying on <u>Infante</u>; <u>Gallagher v. Dupont</u>, 918 So.2d 342 (Fla. Dist. Ct. App. 2005); <u>Wright v. Hartford Underwriters Ins. Co.</u>, 823 So.2d 241 (Fla. Dist. Ct. App. 2002); <u>Ahearn v. Odyssey Re (London) Ltd.</u>, 788 So.2d 369 (Fla. Dist. Ct. App. 2001); and <u>Coblentz v. Am. Sur. Co. of N.Y.</u>, 416 F.2d 1059 (5th Cir.1969), Mike/SCC argue further that, by reason of its breach, U.S. Fire forfeited its right to look behind the settlement and relitigate the terms of the policy. Under these circumstances, Mikes/SCC contend that all they need show to enforce the settlement is coverage, a wrongful refusal to defend, and that the settlement was reasonable and made in good faith.

U.S. Fire counters that the actual communications relied upon by Mikes/SCC as "coverage disclaimers" completely dispel the notion that U.S. Fire denied coverage and refused to defend the insureds. While U.S. Fire acknowledges that Florida law permits an insured to enter into a reasonable settlement when its insurer has wrongfully refused to provide it with a defense, it contends that Mikes/SCC cannot establish that U.S. Fire wrongly refused to defend because the Freedom Defendants were defended at all times by FIGA and at no time was it

---

[20]In support of this argument, they cite to <u>Kohne II</u>; <u>Ramos v. Nw. Mut. Ins. Co.</u>, 336 So.2d 71 (Fla. 1976); <u>Stewart Sleep Ctr., Inc. v. Atl. Mut. Ins. Co.</u>, 860 F. Supp. 1514 (M.D. Fla. 1993); <u>Paz v. Allstate Ins. Co.</u>, 478 So.2d 849, 850 (Fla. Dist. Ct. App. 1985); and <u>Infante v. Preferred Risk Mut. Ins. Co.</u>, 364 So.2d 874, 875 (Fla. Dist. Ct. App. 1978).

requested to provide a defense or required to do so by law.  Quoting First American, it argues that, "[w]hile an insured is free to enter into a reasonable settlement when its insurer has wrongfully refused to provide it with a defense to a suit, we find that the insured is not similarly free to independently engage in such settlements where, as here, the insurer has not declined a defense to suit. . . ."  695 So.2d at 477.  It urges that the decisions in Perez and Jacobs are dispositive of the issue in this case.  While U.S. Fire concedes that it never undertook representation of the Freedom Defendants, it insists that it never actually declined to defend them, and, in any event, the Freedom Defendants were represented at all times by counsel supplied by FIGA.  Lastly, relying on Nat'l Union Fire Ins. Co. v. Travelers Ins. Co., 214 F.3d 1269 (11th Cir. 2000), U.S. Fire argues that any duty it had to defend was at all times consecutive to that of the primary insurer (FIGA/PHICO).  (Doc. 273).

Under Florida law, an insured may enter into a reasonable settlement agreement when its insurer has wrongfully refused to provide a defense to a suit.  Conversely, the insured is not free to independently engage in such settlement where the insurer has not declined a defense to suit.  See Perez, 712 So.2d at 1212-13 (insured breached insurance contract by entering into settlement with claimant without insurer's consent while being defended by insurer under reservation of rights); Jacobs, 754 F. Supp. at 870-71 (insured violated terms of policy by entering into settlement with claimant because insured did not refuse insurer's defense or obtain its approval prior to settling).  Here, it is undisputed that neither U.S. Fire nor FIGA consented to the settlement at the time it was executed.  See Dep. Allen (Doc. 255-2 at 11-12); Dep. Hauser (Doc. 255-4 at 24-25); Dep. Hocko (Doc. 255-11 at 31, 34).  It is also undisputed that at the time the settlement was agreed to, FIGA was fully representing the Freedom Defendants on all the claims in the Suncoast action.  See Dep. Allen (Doc. 255-2 at 7-8); Dep.

Hauser (Doc. 255-4 at 12-13).  In the circumstances, assuming U.S. Fire's policy required its

consent to any settlement agreement as a condition to its duty to indemnify, unless U.S. Fire

had evidenced an unequivocal denial of coverage or somehow breached its duty to defend, the

Freedom Defendants were not at liberty to independently enter a settlement and the settlement

is unenforceable as a matter of Florida law.

     First, I conclude that U.S. Fire's policy unambiguously required the Freedom

Defendants to obtain its consent before settling.  As set forth above, U.S. Fire's obligation to

indemnify was conditioned on the insured's liability being made certain either by a final

judgment or by "a written agreement of the insured, the claimant and [U.S. Fire]."  (Doc. 135-4

at 6).  A Florida Amendatory Endorsement to the policy prescribed that no action would lie

against U.S. Fire unless, as a condition precedent thereto, there was full compliance with the

terms of the policy and the insured's obligation to pay had been "finally determined" either by

judgment or "by your written agreement, the claimant and us."  (Doc. 135-2 at 10).  Even

assuming, as does Mikes/SCC, that the addition of this "no action" language amended the loss

payments condition of the policy, and accepting *in arguendo* that the endorsement left the

terms of the condition less clear, I cannot accept Mikes/SCC's construction of this language.

By their construction, the insured was left free to independently conclude a settlement

agreement effective to trigger U.S. Fire's indemnity obligation without the insurer's consent,

regardless of the circumstances.  Construing the policy in that manner would lead to obviously

absurd results, and Florida law provides that policies will not be construed to reach such

results.  See Deni, 711 So.2d at 1140.  By my reading, under both provisions a settlement could

not trigger U.S. Fire's indemnity obligation unless the insurer was a party to it, that is, unless it

also agreed to the determination of liability and any damages.  Without any doubt, the policy

prescribed that no insured would assume any obligation or incur any expense without U.S.

Fire's consent. (Doc. 135-4 at 6).  Under Florida law, such language "requires the insured to

obtain the insurer's consent before settling."  See Perez, 712 So.2d at 1213 (citing Jacobs, 754

F. Supp. at 870).  Here, the policy required the insured to obtain U.S. Fire's consent as a

predicate to an enforceable settlement.

      Mikes/SCC primarily urge that the Freedom Defendants were authorized to enter the

settlement without U.S. Fire's consent because U.S. Fire had issued repeated denials of

coverage and/or refused to defend in the underlying action.  Under Florida law, when an

insurer unequivocally denies coverage that actually exists, the insurer has breached the contract

and therefore cannot rely on a contractual provision prohibiting the insured from settling the

claim without its consent.  Gallagher, 918 So.2d at 347-48; Paz, 478 So.2d at 850; Infante, 364

So.2d at 875.  Likewise, when an insurer improperly fails or refuses to defend an insured's

claim, the insurer has breached the insurance contract and an insured is entitled to enter into a

reasonable settlement even though the policy purports to avoid liability for a settlement made

without the insurer's consent.  Gallagher, 918 So.2d at 348; Steil v. Fla. Physicians' Ins.

Reciprocal, 448 So.2d 589, 591 (Fla. Dist. Ct. App. 1984).  As set forth below, I find that U.S.

Fire did not deny coverage or wrongfully refuse to defend its insureds.

      Mikes/SCC assert that U.S. Fire disclaimed coverage in each of the following

communications: (1) a letter dated June 12, 2003, from U.S. Fire's counsel to Insured Freedom

Group ("First Coverage Disclaimer"); (2) a letter dated June 27, 2003, from U.S. Fire's counsel

to Insured Herold ("Second Coverage Disclaimer"); (3) a letter dated June 13, 2003, from U.S.

Fire's counsel to Mikes ("Third Coverage Disclaimer"); (4) a letter dated September 2, 2003,

from U.S. Fire's counsel to Mikes ("Fourth Coverage Disclaimer"); (5) U.S. Fire's February

25, 2004, answer and affirmative defenses (nos. 6-11) to Mikes' state court declaratory action

("Fifth Coverage Disclaimer"), (6) a letter dated August 24, 2004, from U.S. Fire's counsel to

Mikes ("Sixth Coverage Disclaimer"); (7) a letter dated September 16, 2004, from U.S. Fire's

counsel to Mikes ("Seventh Coverage Disclaimer"); (8) a letter dated September 20, 2004,

from U.S. Fire's counsel to Mikes ("Eighth Coverage Disclaimer"); (9) U.S. Fire's initial

complaint (paragraphs 42 through 51) in this action filed on December 27, 2004, ("Ninth

Coverage Disclaimer"); (10) a letter dated September 16, 2005, from U.S. Fire's counsel to

Mikes ("Tenth Coverage Disclaimer"); and (11) a letter dated September 22, 2005, from U.S.

Fire's counsel to the mediator setting forth his mediation statement ("Eleventh Coverage

Disclaimer").[21]  See (Doc. 258 at 3-11).   They urge that the denial of coverage was also

manifested in the manner in which U.S. Fire participated in mediation and/or its lack of

participation therein and in the subsequent settlement discussions.

Upon review of this evidence and consideration of Florida law, I find that the alleged

"coverage disclaimers" or "denials" urged by Mikes/SCC do not constitute unequivocal denials

of coverage such that they establish a breach on U.S. Fire's part of its duty to indemnify.[22]

---

[21]Copies of these disclaimers, except the Eleventh Coverage Disclaimer are filed separately at Doc. 329.  The mediation summary , the Eleventh Coverage Disclaimer, was submitted as Defendants' Ex. 1, to the May 17, 2007, hearing. To the extent that the communications therein were protected settlement and/or mediation statements, U.S. Fire has waived any objection thereto.  (Doc. 339-2 at 107).

[22]An insurer's duty to indemnify is narrower than its duty to defend, and there must be a determination that coverage exists before a duty to indemnify arises.  McCreary v. Fla. Residential Prop. & Cas. Joint Underwriting Ass'n, 758 So.2d 692, 695 (Fla. Dist. Ct. App. 1999).  Wrongful denial of coverage constitutes a breach of the duty to indemnify. Util. Serv. Co., Inc. v. St. Paul Traveler's Ins. Co., No. 5:06-cv-207 (CAR), 2007 WL 188237, *2 (M.D. Ga. 2007).  An insurer that denies coverage on a mistaken but honest belief that coverage exists does so at its own risk. Gallagher, 918 So.2d at 347; Thomas v. W. World Ins. Co., 343 So.2d 1298, 1304 (Fla. Dist. Ct. App. 1977).

Significant to my determination is the fact that U.S. Fire was the excess insurer in this matter. In that light, my reading of the statements from its coverage counsel do not reflect the unequivocal denial of coverage required by Florida law.  While the correspondence strongly advocated that U.S. Fire had no coverage responsibilities and the conduct of its coverage counsel in the litigation clearly suggested U.S. Fire's unwillingness to contribute to any settlement,[23] I conclude that, given its role as an excess insurer in this dispute, its statements and conduct conveyed no more than a reservation of the rights to dispute its coverage obligations, its view that it had no duty to defend in the circumstances, and its further view on the value of the claims, the available underlying coverage and the likelihood that its policies would never be reached by the exhaustion of that coverage.  Even the mediation statement, which unequivocally stated that U.S. Fire would bring no money to the table, did not constitute an outright denial of coverage when considered in full.  Significantly, Mikes/SCC cite no authority demonstrating that alleged coverage disclaimers such as these constitute outright denials of coverage for the claims asserted in the Suncoast action, and my independent review of Florida authority suggests the contrary.  See Infante, 364 So.2d at 875, (outright refusal to honor claim was denial of coverage); Fla. Farm Bureau Mut. Ins. Co. v. Rice, 393 So.2d 552, 553 (Fla. Dist. Ct. App. 1980) (same); Paz, 478 So.2d at 849 (refusal to arbitrate constituted

---

[23]I remain troubled by U.S. Fire's repeated insistence that there was no coverage because of late notice by the insureds.  As discovery revealed, that coverage defense was entirely bogus and arguably U.S. Fire had avoided its responsibilities in the case for years and taken a false position in proceedings in this court.  However, there is no showing that U.S. Fire willfully asserted a false position and the defense was withdrawn, ostensibly in a timely manner.  There is also a troubling suggestion by Ms. Hauser, an experienced defense attorney who represented the Freedom Defendants, that U.S. Fire demonstrated a denial of a defense by the manner in which it participated in the defense.  However, as discussed below, it did not participate in the defense and the litigation position taken by coverage counsel did not amount to a denial of coverage.

26

denial of coverage); <u>Kohne II</u>, 2006 WL 1390415, *3-4, 10 (unequivocal denials of claims

prior to suit and recommendation that insured contact personal counsel at own expense

constituted denial of coverage); <u>cf.</u> <u>First Am.</u>, 695 So.2d at 477 (initial letter denying coverage

and instructing insured to notify it if suit filed did not result in breach by insurer).  In short, the

alleged coverage disclaimers here do not fall within those found by Florida courts.

    Regarding the duty to defend,[24] Mikes/SCC summarily assert in their motion for

partial summary judgment that U.S. Fire failed to defend the Freedom Defendants when

obligated to do so and settle the underlying action when afforded a reasonable opportunity to

do so.  (Doc. 256 at 12, 14).  At the hearing on the instant motions, Mikes/SCC expanded on

this argument.  Thus, they argued that although U.S. Fire is an umbrella insurer, in these

circumstances it was also a co-primary liability insurer in light of its policy language providing

that it has the duty to defend any claim or suit seeking damages when damages are sought that

are not covered by the terms and conditions of the underlying insurance.  According to

---

[24]The duty to defend is separate and apart from the duty to indemnify, and it is well-settled in Florida that a liability insurer's duty to defend is broader than its duty to indemnify. <u>Jones v. Fla. Ins. Guar. Ass'n</u>, 908 So.2d 435, 443 (Fla. 2005); <u>Allstate Ins. Co. v. RJT Enters.</u>, 692 So.2d 142, 144 (Fla. 1997); <u>U.S. Fire Ins. Co. v. Hayden Bonded Storage Co.</u>, 930 So.2d 686, 691 (Fla. Dist. Ct. App. 2006); <u>Rad Source Techs., Inc. v. Colony Nat'l Ins. Co.</u>, 914 So.2d 1006, 1007 (Fla. Dist. Ct. App. 2005); <u>Wendy's of Ne. Fla., Inc. v. Vandergriff</u>, 865 So.2d 520, 522 (Fla. Dist. Ct. App. 2003).  Florida applies a bright-line test with respect to the duty to defend - an insurance company's duty to defend an insured is determined strictly by the allegations in the [operative] complaint [and the defense provisions in the insurance policy].  <u>Jones</u>, 908 So.2d at 443; <u>Higgins v. State Farm Fire & Cas. Co.</u>, 894 So.2d 5, 9-10 (Fla. 2004); <u>Amerisure Ins. Co. v. Gold Coast Marine Distribs., Inc.</u>, 771 So.2d 579, 580 (Fla. Dist. Ct. App. 2000).  Generally, if the allegations in the complaint state facts that bring the injury alleged within the policy's coverage, the insurer must defend regardless of the merits of the lawsuit.  <u>Jones</u>, 908 So.2d at 443.  If an examination of the allegations of the complaint leaves any doubt about the insurer's duty to defend, the issue must be resolved in favor of the insured.  <u>Id.</u> (citing <u>Grisson v. Commercial Union Ins. Co.</u>, 610 So.2d 1299, 1307 (Fla. Dist. Ct. App. 1992), and <u>Baron Oil Co. v. Nationwide Mut. Fire Ins. Co.</u>, 470 So.2d 810, 814 (Fla. Dist. Ct. App. 1985)).

Mikes/SCC, U.S. Fire had a duty to defend the Freedom Defendants in the underlying action because they alleged mental suffering, advertising injuries, and punitive damages, claims that were not covered under PHICO's policies but were not specifically excluded by U.S. Fire's 1995 policy.  U.S. Fire counters that it had no duty to defend at any time during the <u>Suncoast</u> litigation because, as an excess carrier, it's duty was consecutive to that of the primary insurer who was at all times defending the insureds in the <u>Suncoast</u> action.  Here, while I conclude that U.S. Fire and its insured would have been better served had it provided a concurrent defense, under U.S. Fire's policy, considerations of Florida law, and generally accepted insurance principles, U.S. Fire did not breach its duty to defend in this case.

It is a generally accepted insurance principle that an insurer has to defend its insured whenever it ascertains facts from the complaint that show potential liability within the policy's coverage.  Florida law is the same.  <u>See</u> <u>Jones</u>, 908 So.2d at 443.  However, this same principle does not apply to an excess insurer as long as the primary insurer has a duty to defend.  <u>See</u> 14 Couch on Insurance, § 200:41 (2007) (collecting cases); Allan D. Winded, 1 Insurance Claims & Disputes, §§ 4:10, 4:11 (4th ed. 2007) (collecting cases).  Once an insurer assumes the defense of the insured pursuant to its duty to defend, other insurers, including an excess insurer, that provide coverage and have a duty to defend are ordinarily no longer obligated to provide a defense to the insured.  <u>Id.</u> at § 4:10.  The rationale for this is that the insurer undertaking the representation does so for all the claims and damages, whether or not the claims are covered under its policy.  Similarly, in Florida the duty to defend encompasses legal actions against an insured that may state more than one theory of liability, and even though the insurance policy covers only one of the claims stated in the lawsuit, the insurer is obligated to defend the entire suit.  <u>See</u> <u>Nova Cas. Co. v. Waserstein</u>, 424 F. Supp. 2d 1325, 1332 (S.D. Fla.

2006) (citing <u>Baron Oil</u>, 470 So.2d at 813-14); <u>Sunshine Birds & Supplies, Inc. v. U.S. Fid. & Guar. Co.</u>, 696 So.2d 907, 910 (Fla. Dist. Ct. App. 1997).

Here, it is apparent that the defense of the Freedom Defendants proceeded in a manner consistent with these principles. It is undisputed that PHICO, then FIGA, undertook to represent the Freedom Defendants as to all claims regardless of whether they were covered claims under the PHICO policies, *including* those alleged for advertising injury, mental suffering, and punitive damages. <u>See</u> Dep. Allen (Doc. 255-2 at 7-8); Dep. Hauser (Doc. 255-4 at 12-13). In the circumstances, absent policy language obliging it to undertake the defense or some exception to these principles, U.S. Fire had no duty to provide a concurrent defense. Here, Mikes/SCC urge that U.S. Fire was obliged to act as a co-primary liability insurer because its policy defense provision provided that it had the duty to defend any claim or suit seeking damages that were not covered by the terms and conditions of the underlying insurance. By this argument, U.S. Fire had a duty to defend the Freedom Defendants in the underlying action because of the claims for mental suffering, advertising injuries, and punitive damages, claims for which there was no coverage under PHICO's policies but which were covered (or not specifically excluded) by U.S. Fire's 1995 policy.

First, I disagree with the assertion that PHICO's policy did not cover damages for mental pain and suffering and advertising injury. Such are not specifically excluded, and a fair reading of the PHICO policy indicates that defamation and invasion of privacy (the claims alleged by Mikes/SCC and from which their damages stem) were covered claims.[25] Thus, even

---

[25]Under the PHICO policy, "Coverage B" extends to "all sums which the insured shall be legally obligated to pay as damages because of personal injury [ ] caused by an occurrence during the policy period." <u>See</u> (Doc. 133-2 at 3). "Personal Injury" means . . . injury arising from one or more of the following offenses committed in the conduct of the Insured's business: . . . (2) . . . oral or written publication of material that libels; slanders; defames; . . .;

by their reading of U.S. Fire's policy, such damages/claims were covered by PHICO and U.S. Fire was not obliged on that basis to defend the claims unless and until the applicable limits of the underlying insurance were exhausted by payments.  The claim for punitive damages, first made in the Eighth Amended Complaint, is somewhat more problematic.

It is undisputed that punitive damages were specifically excluded under the PHICO policies.  See (Doc. 133-2 at 5).  It is also undisputed that the initial U.S. Fire policy issued in 1995 did not have a similar exclusion.[26]  Thus, Mikes/SCC suggest that, under its express policy language, U.S. Fire was obliged to defend the action at least from the filing of the Eighth Amended Complaint in December 2004.  While there is a certain facile appeal to the argument, I find that the decision in National Union dictates a different conclusion.

As noted above, an insurer's duty to defend is determined strictly by the allegations in the complaint and the defense provisions in the insurance policy.  As stated by the Eleventh Circuit, "[i]n apportioning contractual responsibilities among multiple insurers, . . . 'Florida law is quite clear that the parties' intent is to be measured solely by the language of the policies unless the language is ambiguous.'"  Nat'l Union, 214 F.3d at 1272.  In that case, the district court had concluded that in the given facts, the excess insurer had a concurrent duty to defend. After considering its policy language, the Eleventh Circuit reversed, finding that the excess liability insurer's (National Union) duty to defend was consecutive to, rather than concurrent

---

or constitutes an invasion of the right of privacy."  (Doc. 133-4 at 3).  While the policy does contain an exclusion for personal injury under (2) above where the offense concerns an organization or business or its products or services and is "committed by or at the direction of any Insured with knowledge of the falsity thereof," (Doc. 133-3 at 1), the exclusion was never established.  And, as noted, PHICO was ordered early by the court to provide a defense and it did so as to all claims.

[26]The succeeding policies issued by U.S. Fire in 1996 and 1997 excluded claims for punitive damages.

with, the primary insurer's duty to defend.  Significant to the present dispute is the court's

determination of the excess insurer's intent where that policy provided:

> The provisions of this section apply solely to occurrences
> covered under this policy *but not covered by any underlying
> policies listed in the Schedule of Underlying Insurance or any
> other underlying insurance providing coverage to the Insured*.
>
> This section shall also apply to occurrences *not covered by
> any underlying insurance* due to exhaustion of any aggregate
> limits by reason of any losses paid thereunder.

Id. (emphasis added by the court).  In the court's view, "[t]he emphasized language

unambiguously manifests [the insurer's] intention that its policy only activate following the

complete cessation of coverage under all underlying policies," and thus the excess insurer's

duty to defend was consecutive to rather than concurrent with any underlying insurance.  U.S.

Fire's defense provision contains similar qualifying language.  See (Doc. 135-5 at 10) ("We

shall have the right and duty to defend any 'Claim' or 'Suit' seeking damages, . . . covered by

the terms and conditions of this policy, even if the allegations are groundless, false or

fraudulent, when: (1) the applicable limits of "Underlying Insurance" and "Other Insurance"

*have been exhausted by payments*; or (2) damages . . . are sought *which are not covered by the

terms and conditions of "Underlying Insurance" or "Other Insurance*.") (emphasis supplied).

Given the principles discussed above, which suggest that FIGA was charged with the duty to

defend all claims and the Eleventh Circuit's construction of this limiting language, I am left to

conclude that the intention of U.S. Fire was the same as that of National Union, i.e., that its

policy would not kick-in until the complete cessation of all coverage under the PHICO/FIGA

policies and its duty to defend remained consecutive even after the assertion of a claim for

punitive damages.  Upon this conclusion, U.S. Fire did not breach its duty to defend.

In sum, I conclude that the parties to the <u>Suncoast</u> action arguably entered into an enforceable settlement agreement, although final decision on that matter should await a ruling by the Florida Supreme Court in <u>Toomey</u>.  Regardless, I find that the Freedom Defendants breached the terms of the U.S. Fire policy by settling the <u>Suncoast</u> action without U.S. Fire's consent.  As the excess insurer, U.S. Fire did not wrongfully deny coverage or wrongfully refuse to defend its insureds.  In the circumstances, U.S. Fire is not bound by the settlement.

IV.

For the reasons set forth above, it is RECOMMENDED that **Plaintiff's Motion for Summary Final Judgment** (Doc. 252) be GRANTED, that **Defendants' Motions for Partial Summary Judgment** (Docs. 258, 259) be DENIED**, and **Defendants' Motion for Partial Summary Judgment that U.S. Fire Received Timely Notice of the Claim, and U.S. Fire's Late Notice Defense does not Void Coverage** (Doc. 259) be DENIED as moot.[27]

Respectfully submitted this
23rd day of August.2007.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within ten days from the date of its service shall bar an aggrieved party

---

[27]Should the court adopt the dispositive conclusions herein recommended, Defendants' other two motions for partial summary judgment (Docs. 260-61) are rendered moot and may be denied.

from attacking the factual findings on appeal and a <u>de novo</u> determination by a district judge. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; M.D. Fla. R. 6.02; <u>see also</u> Fed. R. Civ. P. 6; M.D. Fla. R. 4.20.

Copies furnished to:
The Honorable Steven D. Merryday, United States District Judge
Counsel of Record