UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

**UNITED STATES FIRE INSURANCE COMPANY**, a Delaware corporation

    Plaintiff,

v.

**FREEDOM VILLAGE OF SUN CITY CENTER, LTD.**, a Florida limited partnership; **FREEDOM GROUP, INC.**, a Florida corporation; and **FRANK HEROLD**,

    Defendants.            /

Case No.CV-2783-T-23 TBM

### OPPOSITION OF MIKES/SCC TO U.S. FIRE'S OBJECTIONS (DOC. 348) TO REPORT AND RECOMMENDATIONS

JAMES R. MIKES ("Mikes") and SUNCOAST COUNTRY CLUBS, INC. ("SCC") (collectively "Mikes/SCC") assert opposition to *U.S. Fire's Objections to Magistrate's Report and Recommendations* ("U.S. Fire's Objections") (Doc. 348) filed with respect to the Report and Recommendations (the "R&R") (Doc. 346).[1]  Mikes/SCC request the Court to consider the following in its de novo review of the complete record facts and legal basis of the R&R's conclusions.

### THE RECORD BEFORE THE COURT - U.S. FIRE'S OPPOSITION IS BASED ON FACTS NOT PROPERLY PART OF THE RECORD

U.S. Fire's Objection (page 2) advises that U.S. Fire does not object to "any of the facts set forth in the R&R". As already noted in Mikes/SCC's Objections (Doc. 350), the R&R contains an inadequate, incomplete and erroneous statement of the facts (resulting in the R&R's incorrect Section D legal conclusions).  The Court's review of the full record of relevant, uncontested facts will dispel U.S. Fire's positions and support the Mikes/SCC

---

[1] Mikes/SCC previously filed objections (Doc. 350) (the "Mikes/SCC Objections") which must be considered by the Court in tandem with this Opposition.

positions. [2] Incredibly, after asserting no issue with the "facts", U.S. Fire misrepresents as "testimony", matters which may not be considered by this Court for purposes of Rule 56 motions; i.e., inadmissible statements of defense counsel and out of context quotes of statements made by the Magistrate Judge.

*The Record Before this Court is Substantially that*
*Which Mikes/SCC Filed as Affidavits, Transcripts and*
*<u>Exhibits to Which U.S. Fire Posed No Objection</u>*

In <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986), the United States Supreme Court mandated that district courts must decide summary judgment by consideration of the entire record. All affidavits and exhibits identified and attested to by each affiant filed by Mikes/SCC, [3] as well as transcript testimony with exhibits identified therein, [4] <u>must be considered</u> by this Court to determine whether any dispositive motion may be granted or should be denied.

To demonstrate that there is no genuine issue as to any material fact asserted as the basis for Mikes/SCC's Rule 56 motions and to support Mikes/SCC's objection to U.S. Fire's motions, Mikes/SCC prepared a chronological compilation of record facts and exhibits, Mikes/SCC's Statement of Undisputed Material Facts of Record (the "Record Facts Statement") (Doc. 256), with citations to the place in the record where the facts stated were shown to be uncontroverted.

---

[2]   The record contains affidavits and other filings which this Court is obligated to review objectively, which support each factual statement referenced herein and in the Mikes/SCC dispositive motions and Objection. U.S. Fire failed to file any contradictory evidence in the record to refute any record evidence of Mikes/SCC. A summary judgment may only be based upon record evidence which is admissible at trial.

[3]   The affidavits with exhibits are filed at Docs. 250, 251, 252, 254, 279 and 280, each of which must be considered as part of the uncontroverted record.

[4]   The transcripts with exhibits are filed at Docs. 246 through 249 all of which must be considered as part of the uncontroverted record.

Without legal authority and in the absence of consistent, clear and prevailing precedent within this Middle District Court, the Magistrate Judge entered an Order (Doc. 266) improperly striking the Record Facts Statement. [5] Striking Doc. 256 did not result in the relief sought by Mikes/SCC becoming unsupported by admissible and sufficient record facts, as Mikes/SCC filed a series of affidavits (and relevant exhibits), including a comprehensive Affidavit of Mikes (Doc. 280) which also provides the record "roadmap" and demonstrates U.S. Fire's multiple breach of obligations to the insureds, prompting settlement. [6]

U.S. Fire filed <u>no countervailing record evidence</u>; <u>no affidavit of any nature</u>, <u>no pleading excerpts in any part</u>, few transcript excerpts and failed to establish through the

---

[5] Mikes/SCC also filed Mikes' verification and attestation of facts (Doc. 254), intending that Doc. 254 verify all facts recited in Doc. 256, Doc. 257 (Mikes/SCC's opposition to Doc. 231) and Docs. 258 through 261 (Mikes/SCC's motions for partial summary judgment).

[6] Central to the issues presented by the operative pleadings and therefore, by the dispositive motions (as was reaffirmed by Mikes/SCC's Objection (Doc. 350)), was that U.S. Fire repeatedly, over many years, breached U.S. Fire's duties to its insureds, all <u>prior to</u> the mediated settlement, entitling the insureds to settle without U.S. Fire's consent to settlement. Those breaches evidenced in the record by the affidavits, transcripts and the exhibits identified therein, included U.S. Fire's: (1) repeated coverage disclaimers (as described in Doc. 258 and in other filings) culminating in the absolute denial by U.S. Fire's September 22, 2005 letter as the parties prepared for and entered mediation; (2) failure to defend the insureds when obligated to do so as the <u>primary</u> insurer as to at least some of the claims; (3) repeated violations of the Florida Claims Administration Statute; (4) failure to settle when afforded the reasonable opportunity in the best interests of the Insureds violating the Florida Good Faith Settlement Statute; and (5) commencement of this Federal Action asserting non-coverage and interference with the Insureds' defense of the underlying tort action as set forth in the numerous letters and e-mail of the Insureds' counsel from February 11 through September 23, 2005. **The R&R addresses only some (and ignores many) of U.S. Fire's breaches of obligations to the insureds which voided any policy condition obligation of the insureds to secure U.S. Fire's consent to the settlement.** The U.S. Fire policy conditions imposed upon both U.S. Fire and the insureds are <u>mutually dependent conditions</u>; i.e., the insureds' duties are dependent upon compliance by U.S. Fire with its' duties and obligations. Insurance policies provide a "two way street" of mutual covenants. <u>North American Van Lines, Inc. v. Lexington Insurance Company</u>, 678 So. 2d 1325 (Fla. 4th DCA 1996).

The operative claim of multiple breaches is made by both Mikes/SCC and the insureds (as former parties) at Doc. 148 at page 6 (the insureds' Answer and Affirmative Defenses); Doc. 215-1 at pages 25-28 (Mikes/SCC's Amended Answer and Affirmative Defenses); and the breaches are asserted as the basis for summary judgment relief in favor of Mikes/SCC in the Mikes/SCC dispositive motions (or oppositions to dispositive motions) at Docs. 258 through 260 and 278. Even though Mikes/SCC clearly established by uncontroverted record evidence that U.S. Fire had breached (repeatedly) the duties as insurer, the Magistrate Judge, in error, overlooked (or failed to read) the established record set forth in the affidavits, transcripts and exhibits, all uncontroverted by U.S. Fire.

record, evidence sufficient for a reasonable jury to return a verdict in U.S. Fire's favor.

*U.S. Fire Improperly Referenced Statements*
*<u>Already Found by the Magistrate Judge not to be Admissible</u>*

Mikes/SCC filed a Motion to Strike (or otherwise deem inadmissible) (Doc. 277) certain "evidence" proffered by U.S. Fire in its Rule 56 motion, including statements of Helen Hauser made at a post settlement deposition (the "Hauser statements"). The Magistrate Judge properly determined that the Hauser statements would not be considered for purposes of summary judgment, [7] but erred in denying any portion of the Mikes/SCC motion. The May 17, 2007 hearing transcript demonstrates the Magistrate Judge's ruling not to consider the Hauser statements (page 17):

> THE COURT: You list several particular matters. Insofar as you are seeking an order to strike evidence, the motion in its entirety is denied. Insofar as you're seeking a motion in limine to exclude any of these items of what you call evidence, the motion in limine is denied. However, for purposes of my consideration of the motions -- the cross motions for summary judgment, I am not going to consider the unsolicited -- as it turned out, unsolicited statement by -- or opinion by Ms. Hauser of the import of the settlement, nor am I going to employ or use in any way the testimony by Mr. Herold as to what he thought the settlement was about.

U.S. Fire's Objection (pages 3 - 4 and footnote 1) references the inadmissible Hauser statements, even though U.S. Fire had failed to seek reconsideration of, and thereby waiving any right to have the Court reconsider, the Magistrate Judge's proper

---

[7] The Hauser statements are inadmissible as they: violate the parole evidence rule; are not relevant; constitutes opinion testimony of a lay witness; lack foundation to establish Hauser as an expert on any matter; offers only Hauser's "guess" and mere speculation as to the meaning of the settlement documents; offer an opinion of the intent of mediation negotiations which violates Local Rule 9019 and Federal Rule of Evidence 408; improperly intended to offer interpretation of an undisputed written document and are contrary to U.S. Fire's admissions against interest. Peter Molinelli, the Insureds' separate outside counsel and a signer of the settlement documents, stated in his affidavit, that the settlement documents say what they say and "speak for themselves".

U.S. Fire misrepresented the content of an <u>inadmissible</u>, out of context deposition statement of Hauser, an "after the fact" interpretation contrary to the non-ambiguous terms of the settlement documents (Doc. 239). The Hauser statement was not made in response to and was completely out of context with any question by U.S. Fire's counsel. It was a part of a discussion between Hauser and her counsel while U.S. Fire's counsel was contemplating how to re-phrase a stricken question. Neither the stricken question preceding, nor the question posed after the Hauser statement, related in any manner to what Hauser had stated. The Hauser statement was "coached" as it mirrored the words of her counsel.

exclusion of Hauser's statements. *Mikes/SCC reaffirm their Doc. 277 motion to strike and in limine and move to strike from the Court's consideration the improper reference to non-record evidence in U.S. Fire's Objection.*

There is no need for interpretation based on anything outside the four corners of the settlement documents (Doc. 239) (the "Settlement Documents"). [8] To consider Hauser statements, the Court must ignore the following Federal Rules of Evidence: Rule 104 (only relevant evidence is admissible); Rule 401 (defines relevant evidence as any that makes a fact of consequence to the determination at issue); Rule 403 (irrelevant evidence is specifically inadmissible and not subject to the trier of facts' consideration); Rule 601 (witness must be competent to testify on the subject matter proferred); Rule 701 (disallows opinion testimony from lay witnesses); and Rule 1002 (excludes statements offered solely to interpret an undisputed writing). [9]

*U.S. Fire Improperly Referenced Statements by the*
<u>*Magistrate Judge not Admissible for Purposes of the Rule 56 Motions*</u>

In further disregard for the applicability of these same Rules of Evidence, U.S. Fire's Objection (pages 2 and 4) references the inadmissible commentary of the Magistrate Judge made during the hearing. Federal Rule 601 requires that witness testimony be admissible only if that witness is shown by foundational testimony to be

---

[8] The parole evidence rule prohibits admissibility of extrinsic evidence to create an ambiguity in a settlement agreement. <u>United States Fire Insurance Company v. Caulkins Indiantown Citrus Company</u>, 931 F. 2d 744 (11th Cir. 1991); <u>Parker Beach Restoration, Inc. v. United States</u>, 58 Fed. Cl. 126 (Ct. Cl. 2003); <u>Schwartz v. Florida Board of Regents</u>, 807 F. 2d 901 (11th Cir. 1987); and <u>Zaccaria v. Allstate Insurance Company</u>, 1997 U.S. Dist. Lexis 22337 (Case No. 97-1637) (M.D. Fla. 1997).

[9] Hauser's out of context statement referenced in U.S. Fire's Objection made during a post-settlement deposition <u>cannot be admitted</u> to interpret an unambiguous writing; i.e., the Settlement Documents. However, the affirmative statements of Hauser made in the litany of February through September 2005 correspondence (quoted in Doc. 350 to demonstrate U.S. Fire's extensive interference with the insureds' defense) prior to the mediation and settlement <u>are admissible to prove the existence of breaches by U.S. Fire</u> and that the insureds had demanded that U.S. Fire cure the multiple breaches.

competent to testify on the matters proffered. Further, U.S. Fire quotes the Magistrate Judge out of context in asserting that the Magistrate Judge meant anything of the sort or meant that the statements were correct.

The Magistrate Judge asked questions and posed hypothetical scenarios to assist his analysis of the law and facts relevant to each dispositive motion being considered at the May 17, 2007 hearing. At no time was the Magistrate Judge shown, by foundational evidence, to be competent to "testify" on any disputed issue. Further, the Magistrate Judge's hypothetical scenarios/questions are neither "evidence" nor part of the record (as record is defined by Celotex and FRCP 56), and cannot support U.S. Fire's motions.

## U.S. FIRE INCORRECTLY ASSERTS THAT IT CAN RELY ON AND BENEFIT FROM THE DEFENSE PROVIDED BY A CO-PRIMARY INSURER

U.S. Fire's Objection (page 1) asserts that the insureds were prohibited from settling with Mikes/SCC while another co-primary insurer provided a "full defense" of the insureds that U.S. Fire had repeatedly failed to provide. [10] Based on the well pled allegations of Mikes/SCC's Eighth Amended Complaint, U.S. Fire was clearly obligated to defend the vicarious punitive damage claim as of December 15, 2004, but refused. [11]

---

[10]   U.S. Fire provided the **primary and only coverage with regard to the punitive damage claim** which the State Court approved on December 6, 2004 and filed on December 15, 2004 (Doc. 139-4 through 13 at paragraphs 13 through 22, 361, 362, wherefore paragraph following 364, 381, 389, 390 and wherefore paragraph following 391). Although direct punitive liability insurance coverage is against Florida public policy, U.S. Fire's primary coverage over the vicarious liability punitive damage claim that Mikes/SCC pled against the corporate/partnership insured entities with respect to the actions of their employees, attorneys and representatives is permitted. U.S. Concrete Pipe, Co. v. Bould, 437 So. 2d 1061 (Fla. 1983); Mercury Motors Express, Inc. v. Smith, 393 So. 2d 545 (Fla. 1981); and Schropp v. Crown Eurocars, Inc., 654 So, 2d 1158 (Fla. 1995)

[11]   All doubts as to whether a duty to defend exists in a particular case must be resolved against the insurer and in favor of the insured. Where policy language is subject to differing interpretations, it should be construed liberally in favor of the insured and strictly against the insurer, the one providing coverage prevails. State Farm Fire and Casualty Co. v. CTC Development Corp., 720 So. 2d 1072 (Fla. 1998). The Eleventh Circuit most recently in Hartford Accident and Indemnity Company v. Beaver, 466 F. 3d 1289

6

As demonstrated in Mikes/SCC's Objection (Doc. 350), U.S. Fire had no right to rely upon the acts of co-primary insurer FIGA to meet U.S. Fire's obligations, nor save U.S. Fire from breach of its policy obligation to defend. [12] U.S. Fire failed to defend the insureds in breach of its own obligations (along with the litany of other breaches by U.S. Fire of its obligations to the insureds) and cannot assert breach of the cooperation condition of the U.S. Fire Policy against the insureds to void the settlement.

Further, U.S. Fire cannot claim a right or defense that may have belonged to FIGA/PHICO but was waived. As of the December 2005 settlement until the FIGA settlement with Mikes/SCC on May 17, 2006, it might be contended that FIGA (and PHICO for whom FIGA acted) arguably had the right (but not U.S. Fire) to assert a breach of the cooperation condition of the PHICO policy by an unauthorized settlement. FIGA and PHICO had not breached their obligation to the Insureds (contrasted to the U.S. Fire breach of obligations to the Insureds) as the Insureds' counsel and FIGA's counsel discussed in their September 23, 2005 e-mail (Doc. 251) following receipt of the U.S. Fire's September 22, 2005 (Docs. 250 and 251) absolute denial of coverage heading

---

(11th Cir. 2006), stated: Our starting point is the Florida Supreme Court's decision in Jones v. Florida Ins. Guar. Ass'n, 908 So.2d 435 (Fla. 2005), which succinctly outlined the general parameters of an insurer's duty to defend: It is well settled that an insurer's duty to defend its insured against a legal action arises when the complaint alleges facts that fairly and potentially bring the suit within policy coverage. The duty to defend must be determined from the allegations in the complaint. The duty to defend is of greater breadth than the insurer's duty to indemnify, and the insurer must defend even if the allegations in the complaint are factually incorrect or meritless. Indeed, when the actual facts are inconsistent with the allegations in the complaint, the allegations in the complaint control in determining the insurer's duty to defend. Any doubts regarding the duty to defend must be resolved in favor of the insured.

[12]     Florida law is clear that with respect to two insurers, each with separate policy provisions to provide duties to defend as the primary insurer on separate aspects of the same litigation: (a) **it is the duty of each insurer to defend its insured**; and (b) **defense by one insurer does not inure to the benefit of another insurer.** Argonaut Insurance Company v. Maryland Casualty Company, 372 So. 2d 960 (Fla. 3rd DCA 1979); Continental Casualty Company v. United Pacific Insurance Company, 637 So. 2d 270 (Fla. 5th DCA 1994); Illinois Insurance Exchange v. Scottsdale Insurance Company, 679 So. 2d 355 (Fla. 3rd DCA 1996); and Miami Battery Manufacturing Company v. Boston Old Colony Insurance Company, 1999 U.S. Dist. Lexis 23357 (S.D. Fla. 1999).

into the mediation ordered by this Court.

FIGA raised the unauthorized settlement issue in the FIGA Petition for Declaratory Relief (Doc. 181) filed in this Federal Action, but then settled (and waived) the issue by the FIGA settlement stipulation with Mikes/SCC (Doc. 187) and the motion for dismissal (Doc. 188) approved by this Court (Doc. 190). If U.S. Fire asserts that FIGA's defense of the insureds satisfied U.S. Fire's obligation, then FIGA's settlement/waiver of the "unauthorized settlement" is binding on U.S. Fire. [13]

## U.S. FIRE BLATANTLY MISREPRESENTS THAT MIKES/SCC RELEASED THE INSUREDS

U.S. Fire's Objection (page 6) again <u>misrepresents</u> that the Settlement Documents release of Herold from all liability to Mikes; i.e., *". . . the insureds were given a full release from liability for any portion of the settlement amount . . ."* Notwithstanding U.S. Fire's misrepresentation, the Settlement Documents **do not release** Herold (nor U.S. Fire) from any portion of the Total Settlement Amount, and in fact state: (emphasis added)

> The parties intend that the Total Settlement Amount is enforceable as a final adjudication of the claims in Case No. 98-5802. The intent of this Settlement Agreement is to confirm a legally binding obligation by Herold to pay the Total Settlement Amount to the extent of the insurance coverage provided by PHICO and U.S. Fire and statutory recovery from FIGA. . . . <u>**Plaintiffs shall give full general mutual release (except as limited herein) to Defendants . . . (specifically excluding any release of . . . U.S. Fire) . . . Except with respect to the Total Settlement Amount as specifically reserved herein . . . It is intended that with respect to the Total Settlement Amount, there is no release and this Settlement Agreement is a covenant not to execute or pursue Defendants except as provided herein**</u>.

The Settlement Documents provide that Herold <u>is not released</u> from liability for the over $5 million Total Settlement Amount, but is instead protected via a covenant not to execute. Similarly, the R&R's conjecture as to the <u>anticipated</u> but <u>factually and legally</u>

---

[13] U.S. Fire "wants it both ways". U.S. Fire wants to say FIGA had a duty to act for U.S. Fire in defending the underlying tort action, but at the same time wishes to disavow any consequence of being bound by FIGA's reasonable decision to settle the underlying tort claim.

<u>inapplicable</u> Florida Supreme Court <u>Toomey</u> decision must be disregarded. [14]

## U.S. FIRE INCORRECTLY ASSERTS THAT THE INSUREDS HAD NO OBLIGATION UNDER THE SETTLEMENT DOCUMENTS – U.S. FIRE FABRICATES REQUIREMENTS NOT FOUND IN THE POLICY OR CASE LAW PRECEDENT - THE R&R CORRECTLY FOUND THAT THE SETTLEMENT DOCUMENTS ARE ENFORCEABLE

U.S. Fire's Objection (pages 3, 6, 7 and 9) <u>fabricates requirements</u> to make a binding settlement, asserting that: (emphasis added)

> . . . a <u>**judgment**</u> (<u>**or some other legal encumbrance**</u>) <u>**is critical**</u> to a determination that a settlement agreement creates a legal obligation on the part of the insured. In the absence of such a legally binding obligation, a settlement agreement is not enforceable against the insurer . . . the parties also intended that the settlement agreement not **create a legal encumbrance** of any sort on the part of Frank Herold . . . in the absence of an agreement which **creates a binding obligation** on the part of the insured, the mere intent to make such agreement enforceable against the insurer is not sufficient and does not trump the clear policy language which requires the existence of a binding obligation before coverage may be implicated . . . **neither Herold nor anyone else admitted any wrongdoing or liability** . . .

In the fertile (but distorted) imagination of U.S. Fire as to the state of Florida law and the content of U.S. Fire's own policy, U.S. Fire has fabricated the following "requirements" to make the Settlement Documents binding upon U.S. Fire: (1) a judgment, (2) an admission of wrongdoing, and (3) a legal encumbrance. No such requirements exist in the U.S. Fire Policy nor under applicable Florida precedent.

*The Ambiguous U.S. Fire Policy Language does not*
*Support U.S. Fire's Position that a Judgment or Admission of Liability*
*<u>is Required – the Policy Must be Construed in Favor of Coverage</u>*

U.S. Fire's Objection statement that the U.S. Fire Policy language with respect to "binding obligation" is "clear" is ridiculous. The U.S. Fire Policy <u>ambiguous</u> terms <u>must be interpreted in favor of providing coverage.</u> [15]   The U.S. Fire Policy (Doc. 135-2) states:

---

[14]   <u>Toomey v. Wachovia Insurance Services, Inc.</u>, 450 F. 3d 1225 (11th Cir. 2006). The R&R confuses the implication of the <u>complete release</u> of the tort feasors in <u>Toomey</u> compared to the <u>limited release and covenant not to sue</u> given the insureds by Mikes/SCC in the Settlement Documents.

[15]   Where policy language is subject to differing interpretations, policy provisions that tend to limit or

9

(emphasis added)

> We will pay on behalf of the "Insured" those sums . . . . which the "Insured" **by reason of liability imposed by law** . . . **shall become legally obligated to pay as damages** for: 1. "Bodily Injury" or "Property Damage" . . . . 2. "Personal Injury" . . . . or 3. "Advertising Injury". . .

The U.S. Fire Policy uses the word "*damages*" and phrase "*legally obligated to pay*" but does not clarify nor define either the term or the phrase. The modifying phrase employed in the U.S. Fire Policy (i.e., "*by reason of liability imposed by law*") does not cure the ambiguity. In this context, the U.S. Fire policy does not use the terms which U.S. Fire has imagined to be requirements for a binding settlement; i.e., not "judgment" nor "admission of liability", nor "legal encumbrance". Such terms may not be read into the policy simply because U.S. Fire imagines them to be present.

*The Settlement Documents and Court Orders Meet Every Requirement
of the U.S. Fire Policy and Applicable Florida Precedent*

U.S. Fire's Objection asks the Court to ignore the terms of the Settlement Documents, which the Court is not permitted to do under binding Florida precedent. While serving on the Florida Second District Court of Appeal, now U.S. District Court Judge Lazzara, applied binding Florida precedent and opined in Johnson v. Johnson, 663 So. 2d 663 (Fla. 2nd DCA 1995): (emphasis added)

> It is well settled in this state that **[a] stipulation** properly entered into and relating to a matter upon which it is appropriate to stipulate **is binding upon the parties and upon the Court**." Gunn Plumbing, Inc. v. Dania Bank, 252 So. 2d 1 (Fla. 1971). Furthermore . . . the trial court is bound to strictly enforce the agreement between the parties. [omit cite] These principles are in recognition of the value which stipulations bring to the legal system in terms of simplifying issues,

---

avoid liability are interpreted liberally in favor of the insured and strictly against the drafter who prepared the policy, and exclusions to coverage are construed even more strictly against the insurer than coverage clauses. **When an insurer fails to define a term in a policy, the insurer cannot take the position that there should be a narrow, restrictive interpretation of the coverage provided.** Auto-Owners Ins. Co. v. Anderson, 756 So.2d 29, 34 (Fla. 2000); State Farm Fire and Casualty Company v. CTC Development Corporation, 720 So. 2d 1072 (Fla. 1998); Evanston Insurance Company v. Potts, 199 Fed. Appx. 867 (11th Cir. 2006). Swire Pac. Holdings, Inc. v. Zurich Ins. Co., 845 So. 2d 161 (Fla. 2003); Flores v. All State Insurance Company, 819 So. 2d 740 (Fla. 2002); Deni Assocs. of Fla., Inc. v. State Farm Fire & Cas. Ins. Co., 711 So. 2d 1135 (Fla. 1998).

limiting or shortening litigation, saving costs to the parties, and preserving judicial economy and resources. [omit cite] Accordingly, to foster the legal policy of encouraging stipulations to minimize litigation and expedite resolution of disputes, the law provides that "such stipulations should be enforced if entered into with good faith and not obtained by fraud, misrepresentation, or mistake, and not against public policy." Cunningham v. Standard Guar. Ins. Co., 630 So. 2d 179 (Fla. 1994).

Contrary to U.S. Fire's fabricated requirements, the Settlement Documents (accepted by the State Court for enforcement by the Order of March 8, 2006 (Doc. 176-2)) confirm otherwise and are binding upon the Court and U.S. Fire: (emphasis added)

> This settlement **shall not be reduced to judgment**, **it does not create or establish any encumbrance or lien** . . . The parties intend that the Total Settlement Amount **is enforceable as a final adjudication of the claims** in Case No. 98-5802. The intent of this Settlement Agreement is to **confirm a legally binding obligation by Herold to pay the Total Settlement Amount** to the extent of the insurance coverage . . . . This Settlement Agreement shall be submitted . . . to the presiding judge in Case No. 98-5802 with a **joint request that the Court enter an order of dismissal** . . . that: (i) **approves this Settlement Agreement**; . . . (iv) **authorizes this Settlement Agreement to be fully enforceable . . . as if it were a judgment** even though it shall not be recorded . . .

The agreement that the "settlement shall not be reduced to judgment" is modified by the following agreement that the settlement "is enforceable as a final adjudication" and a "legally binding obligation" and the State Court would enforce it as a "judgment".

*U.S. Fire Incorrectly Asserts that the Insureds were Required to Admit Wrongdoing*

U.S. Fire's Objection (page 9) argues that "*neither Herold nor anyone else admitted any wrongdoing or liability*" in the settlement documents which results in the settlement not being enforceable against U.S. Fire. U.S. Fire cites no case to support that such admission is a requisite to a binding settlement agreement. The actual words used in the Settlement Documents are:

> This Settlement Agreement is a compromise of a disputed matter and shall never for any purpose be considered as an admission of wrongdoing or liability by Herold or any other party.

Contrary to U.S. Fire's lack of supporting case law, the Eleventh Circuit has stated to the contrary in Smalbein v. City of Daytona Beach, 353 F. 3d 901 (11th Cir. 2003),

11

citing Justice Scalia in <u>Buckhannon Bd. and Care Home v. W. Va. Dept. of Health and Human Res.</u>, 532 U.S. 598 (2001) (see also <u>Utility Automation 2000, Inc. Choctawhatchee Electric Coop, Inc.</u>, 298 F. 3d 1238 (11th Cir. 2002)), stating that the failure to include an "admission of liability" is not unusual and not fatal:

> . . . . a consent decree *does not always include an admission of liability on the merits* by the defendant . . . . What is important is that under a settlement agreement that is the functional equivalent of a consent decree, "the plaintiff thereafter may return to court to have the settlement enforced." [omit cite] "In the case of court-approved settlements and consent decrees, even if there has been no judicial determination of the merits, the outcome is at least the product of, and bears the sanction of, judicial action . . .

Black's Law Dictionary 441 (8th ed. 1999) defines "consent decree" as [a] court decree that all parties agree to." . . . which is just what the State Court order approving the Settlement Documents has accomplished in this matter.

*U.S. Fire Erroneously Contends that a "Legal Encumbrance"*
*is Required –Nevertheless, the Settlement Documents do Legally Encumber Herold*

The U.S. Fire Policy does not define "legal encumbrance", the term coined by U.S. Fire, apparently from the use of the word "encumbrance" in the Settlement Documents. Herold agreed that he had "*a legally binding obligation to pay the Total Settlement Amount*" and that the State Court would enforce it as if Herold's agreement was a "judgment". The only limitation to Herold's "legally binding obligation" was from which of Herold's assets Mikes/SCC can collect. Mikes/SCC and Herold negotiated and agreed that recovery was limited to the rights under Herold's asset – the insurance policies. The U.S. Fire Policy does not require that Herold to have paid the damages, to have the resources to pay or be obligated to pay the damages from his own funds. [16]

---

[16] The U.S. Fire Policy provides: "*Condition C . . .Bankruptcy or insolvency of the "Insured" will not relieve us of our obligations under this policy.*" Even if Herold had been or later became bankrupt and was personally discharged from his personal obligation to pay the Total Settlement Amount, U.S. Fire would still

*U.S. Fire Erroneously Contends that a "Judgment"*
*is Required to Create a Legal Obligation to Pay*

U.S. Fire's Objection assertion that Mikes/SCC were required to secure a *judgment* is contrary to the U.S. Fire Policy and applicable case law. This is an assumption that U.S. Fire wishes the Court to accept (without case law or policy support) that a settlement agreement obligation is insufficient, is dead wrong. Under Florida law a settlement and release are as conclusive as a judgment. W.J. Perryman & Company, Inc. v. Penn Mutual Fire Insurance Company, 324 F. 2d 791 (5th Cir. 1963). A stipulation of dismissal with prejudice at any stage of a judicial proceeding, normally constitutes a final judgment on the merits. Astron Indus. Assoc., Inc. v. Chrysler Motors Corp., 405 F.2d 958, 960 (5th Cir. 1968). The Eleventh Circuit stated in Norfolk Southern Corporation v. Chevron, U.S.A., Inc., 371 F. 3d 1285 (11th Cir. 2004): (emphasis added)

> In determining the *res judicata* effect of an order of dismissal based upon a settlement agreement, we should also attempt to effectuate the parties' intent. The best evidence of that intent is, of course, the settlement agreement itself. . . . It might be argued that this way of applying *res judicata* to **dismissals predicated upon settlement agreements** does not adequately respect the fact that such a dismissal **is an actual judgment. We believe it does** . . . .

*Requiring a "Judgment" is Inconsistent with*
*the Florida Direct Action Statute*

U.S. Fire's Objection argument that a judgment id required is contrary to the Florida direct action statute, Florida Statutes §627.4136, which does not require a judgment, only a settlement or a verdict to bring an action against U.S. Fire:

---

be liable to pay Mikes. Herold's financial condition is of no concern. Herold's right under the U.S. Fire Policy was Herold's valuable asset, comparable to other assets such as stock, life insurance policy cash value, real estate interests or bank accounts he held. Herold was entitled to satisfy his personal obligation from this insurance asset, whether he personally was solvent or had other resources to pay. U.S. Fire was paid over $170,000 in premiums for the insurance coverage it disavows (Docs. 135-2 p. 1, 135-5 p. 1 and 135-8 p. 1). The purchase of the asset of insurance coverage was no different than if stock was purchased for such amount in 1995, and the stock value increased over the years, Herold and Mikes could have agreed that Herold would convey the stock to Mikes to satisfy the Total Settlement Amount. Instead, Herold and Mikes negotiated that Herold's insurance asset would be the source of payment.

> It shall be a condition precedent to the accrual or maintenance of a cause of action against a liability insurer by a person not an insured under the terms of the liability insurance contract that such person shall first obtain **a settlement or verdict against** a person who is an insured under the terms of such policy for a cause of action which is covered by such policy.

### *The State Court Order Constitutes a "Judgment"*<br>*Pursuant to Federal Rule of Civil Procedure 54*

As the Settlement Documents provided, the insureds and Mikes/SCC submitted the Settlement Documents to the State Court presiding judge who issued her State Court Order of March 8, 2006 (amended on April 21, 2006 following rehearing) (Doc. 176), which <u>approved</u> and <u>accepted jurisdiction to enforce</u> the Settlement Documents which provided it would be enforced *"as if . . . a judgment"*. U.S. Fire appealed the March 8, 2006 order to the Second District Court of Appeal.

The Settlement Documents were as a direct result of this Court's order to mediate, a mediation conducted under the Federal Rules and the Local Rules of the Middle District. [17] Pursuant to Federal Rule 54 (which provides: *"Judgment" as used in these rules includes a decree and any order from which an appeal lies.*"), the State Court Order is a "judgment". Further, pursuant to applicable Eleventh Circuit precedent, the State Court Order is the <u>functional equivalent to</u> the entry of a consent decree. [18]

### *This Court's Order Approving the FIGA Dismissal*<br>*Constitutes a "Judgment" Pursuant to FRCP 54*

In January 2006, just weeks after the signing of the Settlement Documents, FIGA

---

[17] By order, the parties were directed to participate in a "supervised settlement conference" and to remain in mediation until the disputed issues resolved or an impasse was reached. In preparation, the parties were required by order (Doc. 29) to provide the mediator and the opposing counsel with position statements. The U.S. Fire position statement, its September 22, 2005 letter (admitted at the May 17, 2007 hearing) clearly contained U.S. Fire's position that U.S. Fire denied all coverage duties to the insureds.

[18] <u>Smalbein v. City of Daytona Beach</u>, 353 F.3d 901 (11th Cir. 2003); <u>American Disability Ass'n v. Chmielarz</u>, 289 F.3d 1315 (11th Cir. 2002). A formal consent decree is unnecessary because the incorporation of the settlement into a court order or the explicit retention of jurisdiction over the terms of the settlement are the "functional equivalent of an entry of a consent decree.

filed a motion in this Federal Action seeking to intervene. This Court allowed the intervention on April 19, 2006. On May 5, 2006, FIGA filed its Petition for Declaratory Relief, <u>asserting that the lack of a judgment made the Settlement Documents unenforceable.</u> (Doc. 181).

However, FIGA <u>settled the lack of judgment issue</u> with Mikes/SCC, confirming that the Settlement Documents were binding and enforceable regardless of whether there was a judgment. On May 17, 2006, FIGA consented to and approved the State Action Settlement as set forth in the FIGA Stipulation which was filed with this Court.

This Court's Order of ___, 2006 (Doc. ___) <u>approved</u> FIGA's dismissal of FIGA's Petition for Declaratory Relief. Pursuant to Florida law and the Federal Rules of Civil Procedure, the FIGA Stipulation and this Court's Order (Doc. ___) constituted: (a) "<u>judgment</u>" pursuant to FRCP 54; and (b) a <u>confession of judgment</u> and was the <u>functional equivalent to a judgment</u>.

In Florida, when an insurance company (in this case FIGA) agrees to settle a disputed case (such as FIGA's declaratory relief requested from this Court with respect to the issue of a lack of judgment), and pays the funds as FIGA did, the insurer (FIGA) has made **the functional equivalent of a confession of judgment**. <u>Wollard v. Lloyd's & Cos. of Lloyd's</u>, 439 So. 2d 217, 218-19 (Fla. 1983); <u>Ivey v. Allstate Insurance Co.</u>, 774 So. 2d 679 (Fla. 2000); <u>Pepper's Steel & Alloys, Inc. v. United States</u>, 850 So. 2d 462 (Fla. 2003); <u>Saewitz v. Lexington Insurance Company</u>, 133 Fed. Appx. 695 (11th Cir. 2005); <u>Auto-Owners Insurance Company v. Reliance Insurance Company</u>, 227 F. Supp. 2d 1248 (M.D. Fla. 2002). Even when an insurer files a declaratory action (such as FIGA did in this Court) and then settles and dismisses the dec action, the settlement constitutes a

confession of judgment even if no money is paid. O'Malley v. Nationwide Mutual Fire Insurance Company, 890 So. 2d 1163 (Fla. 4th DCA 2004). [19]

*The Rosen Opinion of the Florida Supreme Court Dispels*
*U.S. Fire's Misguided Reliance on Antiquated Precedent*

U.S. Fire's Objection (pages 4-6) addresses the intent of Mikes/SCC and the Insureds in entering into the Settlement Documents, relying on "out dated" case law precedent [20] no longer viable in light of the opinions of the Florida Supreme Court, Cunningham v. Standard Guaranty Insurance Co., 630 So. 2d 179, 182 (Fla. 1994), Rosen v. Florida Insurance Guaranty Association, 802 So. 2d 291 (Fla. 2001) and Paulucci v. General Dynamics Corporation, 842 So. 2d 797 (Fla. 2003). The Settlement Documents were carefully drafted in light of the clear direction regarding settlement provided by the Cunningham, Rosen and Paulucci opinions and other precedent referenced in Mikes/SCC's Objection (Doc. 350).

U.S. Fire fails to address the clear direction of the Florida Supreme Court set in Cunningham, Rosen and Paulucci, which confirm that a settlement agreement (whether it is or is not "reduced to judgment") is enforceable against the parties as any contract.

With the Cunningham opinion, the Rosen opinion in 2001 (which neutered any application of the antiquated cases upon which U.S. Fire relies; i.e. Cope and Kelly and

---

[19] See also cases based on Buckhannon Bd. and Care Home v. W. Va. Dept. of Health and Human Res., 532 U.S. 598 (2001), that in the case of court-approved settlements, even if there has been no judicial determination of the merits, the outcome is at least the product of, and bears the sanction of, judicial action. Smalbein v. City of Daytona Beach, 353 F. 3d 901 (11th Cir. 2003); Utility Automation 2000, Inc. Choctawhatchee Electric Coop, Inc., 298 F. 3d 1238 (11th Cir. 2002); American Disability Association, Inc. v. Chmielarz, 289 F. 3d 1315 (11th Cir. 2002).

[20] Fidelity and Casualty Company of New York v. Cope, 462 So. 2d 459 (Fla. 1985); Clement v. Prudential Property & Cas. Ins. Co., 790 F. 2d 1545 (11th Cir. 1986); Kelly v. Williams, 411 So.2d 902, 905 (Fla. 5th DCA 1982).

therefore Clement which is based upon Cope), [21] and the Paulucci opinion in 2003, the Florida Supreme Court set the template for the binding agreements set forth in the Settlement Documents which are enforceable against U.S. Fire.

In Rosen, the Florida Supreme Court stated that the intent of the settling parties controls and the failure to secure a judgment was not an issue (contrary to U.S. Fire's Objection), stating: (emphasis added)

> Accordingly, the dispositive question in this case is whether the settlement agreement between Rosen and AB Law Firm constituted a release of the insured and FIGA from all further liability. Appellate courts have recognized the "deeply rooted principle of Florida law that the intent of the parties controls interpretations of their releases." . . . . In Atlantic Coast Line, this Court distinguished between a release and a covenant not to sue, explaining: A release is an outright cancellation or discharge of the entire obligation as to one or all of the alleged joint wrongdoers. A covenant not to sue recognizes that the obligation or liability continues but the injured party agrees not to assert any rights grounded thereon against a particular covenantee. 85 So. 2d at 843.. . . . In Cunningham v. Standard Guaranty Insurance Co., 630 So. 2d 179, 182 (Fla. 1994), we reaffirmed the principle that parties should be encouraged to enter into agreements in which an underlying trial is avoided. . . . In approving the stipulation, we distinguished Cope on the basis that the "underlying claim no longer existed" in that case, Cunningham, 630 So. 2d at 181, whereas in Cunningham, there was a stipulation that preserved the underlying claim: This Court has looked with favor upon stipulations designed to simplify, shorten, or settle litigation and save costs to parties. Such stipulations should be enforced if entered into with good faith and not obtained by fraud, misrepresentation, or mistake and not against public policy. Id. at 182. Taken together, the cases discussed above illustrate the importance courts give to the intent of the parties in determining whether a release has been effectuated. As we clarified in Cunningham, the key with regard to whether Cope applies is whether the "underlying claim" continues to exist after the settlement agreement. Cunningham, 630 So. 2d at 180.
>
> In the present case, the settlement agreement clearly demonstrates the intent of the parties not to release FIGA from liability and the underlying claim against the insured was not released. **The failure to obtain a recordable judgment against AB Law Firm is not fatal to Rosen's claim against FIGA where the sole question remaining was the coverage dispute** . . . We conclude that the settlement between Rosen and AB Law Firm constituted a covenant not to execute against AB Law Firm. The settlement agreement was not a release of AB Law Firm and it clearly was not a release of FIGA. Indeed, the settlement agreement contained an express reservation of the claim against FIGA and the underlying claim was not eliminated with the execution of the settlement agreement. The agreement did not provide a legal impediment to the litigation with FIGA to resolve the coverage dispute, which litigation was clearly within the contemplation of the parties.

---

[21] Rosen dismissed the antiquated legal positions asserted in Cope and Kelley (and therefore Clement), stating: "Our holding in Cope was a narrow one -- "if an excess judgment has been satisfied, absent an assignment of that cause of action prior to satisfaction, a third party cannot maintain action for a breach of duty between an insurer and its insured." Id. at 461. Significantly, however, in that case the underlying claim no longer existed after the release and satisfaction of judgment. The other case upon which the First District relied, Kelly, also focused on whether a bad-faith cause of action was preserved by the stipulation of the parties. 411 So. 2d at 902."

> Therefore, we conclude that the First District misapplied our decision in *Cope* when it concluded that the settlement agreement between Rosen and AB Law Firm constituted a release.

Following Rosen, the Florida Supreme Court in 2003 confirmed that legal obligations set forth in settlement agreements that are subject of a court order accepting jurisdiction (and not necessarily requiring a judgment) are enforceable. The Settlement Documents that have been approved by the State Court Order, and are enforceable legal obligations of Herold. The State Court has continuing jurisdiction to enforce the terms of the Settlement Documents. The Florida Supreme Court in Paulucci stated:

> [We] hold that . . . **a court has jurisdiction to enforce a settlement agreement where the court has either incorporated the agreement into a final judgment or approved the agreement by order and retained jurisdiction to enforce it terms**. . . . Once parties to a lawsuit have reached settlement, the common resolution is an agreement by the plaintiff to dismiss the pending lawsuit in exchange for other mutual agreements between the parties. Sometimes these other agreements may take some time to complete, and are not contemplated to be completed prior to the plaintiff's dismissal of the lawsuit. . . . If the litigants have presented their settlement to the judge, who in turn incorporated or relied upon that settlement agreement and entered an order of dismissal predicated on the parties' settlement agreement, the litigants may later file a motion in the dismissed case seeking enforcement of the settlement agreement. . . . We . . . **hold that when a court incorporates a settlement agreement into a final judgment or approves a settlement agreement by order and retains jurisdiction to enforce its terms, the court has the jurisdiction to enforce the terms of the settlement agreement**. . . . Further, we conclude that in cases where the approval of the settlement agreement is by order rather than by incorporating the terms into a final judgment, the statement in the order that the trial court expressly retains jurisdiction to enforce its terms makes it clear that all parties and the court contemplated an express retention of jurisdiction rather than the necessity of an independent lawsuit.

Mikes/SCC respectfully request the Court reject the R&R to the extent in error as expressed herein and in Mikes/SCC's Objection (Doc. 350), and enter an order granting Mikes/SCC's dispositive motions and denying U.S. Fire's, incorporating the objections expressed herein and in Mikes/SCC's Objection (Doc. 350).

## Certificate of Service

We hereby certify that on September 21, 2007, we electronically filed the foregoing Mikes/SCC's Opposition to U.S. Fire's Objection (Doc. 348) with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to Gary Khutorsky, STEPHENS, LYNN, KLEIN, LACAVA, HOFFMAN & PUYA, P.A., 9130 South Dadeland Boulevard, Penthouse II, Miami, Florida 33156.

| | |
|---|---|
| JAMES R. MIKES, P.A. | LAW OFFICES OF BETSY L. McCOY, P.A. |
| P.O. Box 24269 | 444 Valencia Avenue |
| 3702 West Kennedy Boulevard | Suite 3 |
| Tampa, Florida  33623 | Coral Gables, Florida  33134 |
| Tel: (813) 495-4544 | Tel:  (813) 486-0500 |
| Fax: (727) 374-8733 | Fax:  (305) 446-0665 |
| jimmikes@tampabay.rr.com | blm@betsymccoy.com |
| /s/ James R. Mikes | /s/ Betsy L. McCoy |
| JAMES R. MIKES | BETSY L. McCOY |
| Florida Bar No. 0331198 | Florida Bar No. 813036 |