UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

UNITED STATES FIRE INS. CO.,

      Plaintiff,                           CASE NO.: 8:04-cv-2783-T-23-TBM

vs.

JAMES R. MIKES and
SUNCOAST COUNTRY CLUBS, INC., et al.

      Defendants
_____/

**U.S. FIRE'S *AMENDED* RESPONSE TO MIKES/SCC'S OBJECTION
TO MAGISTRATE'S REPORT AND RECOMMENDATIONS [DKT 350]**

    Plaintiff, UNITED STATES FIRE INSURANCE COMPANY, ("U.S. Fire"), through its undersigned counsel, hereby files its Amended Response to Objection of Mikes/SCC to Proposed Findings and Recommendations Contained in Report and Recommendations [Dkt 350] (herein "Objection"), and states as follows:

    On August 23, 2007, the magistrate judge issued his Report and Recommendation [Dkt 346](R&R) recommending that U.S. Fire's Motion for Summary Final Judgment [Dkt 252] be granted. The thirty-two page R&R came following review of the parties' motions for summary judgment, review of "*everything that's been filed in this case, including the depositions,*" (p. 5, Transcript of Hearing of 5/17/07) and after several hours of oral argument on May 17, 2007. Mikes/SCC object to the R&R as factually "*erroneous, misleading and incomplete*"[1] and allege

---

[1]When asked at the hearing whether she had any issues with the historical facts as recited in U.S. Fire's motion for final summary judgment and restated by the magistrate judge, counsel for Mikes/SCC stated - " *I can assure you that I have not opposed them, and I have corroborated them with Mr. Mikes' affidavit at [Dkt] 280*"

that the R&R makes incorrect legal conclusions.  (P. 2, Objection).  The Objection recites a

litany of "omitted" facts (Objection, pp. 2-12) which are either irrelevant or unsupported and

which, even if true, do not warrant a different result.  The Objection then rehashes the same

arguments (Objection, pp. 12-25) which have been previously made by Mikes/SCC and

thoroughly addressed and disposed of in the R&R.  Mikes/SCC's factual and legal challenges

are addressed in the order of appearance.[2]

### ERRONEOUS, MISLEADING OR INCOMPLETE FACTUAL FINDINGS
*1995-98 Facts - the U.S. Fire Policy - Initial Notice by Insureds -*
*1998 Breach of U.S. Fire's Obligations*

At no time during the course of this lawsuit has there been an issue as to the actual dates of

coverage of PHICO's policy and U.S. Fire's policies.  The certified copies of U.S. Fire's polices

on record before this Court establish that U.S. Fire's coverage extended from 6/30/95 to 6/30/98.

[Dkt 133].  It is also undisputed that PHICO provided underlying primary coverage during that

same period of time. [Dkt 133, PHICO Policy].  There was no question, certainly, when the

*Suncoast* action was filed in 1998, that PHICO was the primary insurer and that its coverage

began on 6/30/95.  Mikes' own Affidavit and exhibits confirm that PHICO's policy became

effective on  6/30/95 [Dkt 280, Ex. D] and covered the same period as U.S. Fire's policy [Dkt

280, ¶17].  Mikes/SCC's apparent objection that PHICO's and U.S. Fire's policies did not cover

the exact same time frame is contrary to the record and Mikes/SCC's own submissions.

---

(Hearing, p. 31)

[2] In the event this Court does not accept the R&R's ultimate recommendation, then U.S. Fire has asked the Court to reconsider the magistrate's rejection of U.S. Fire's argument relating to the issue of "legal obligation," as set forth in U.S. Fire's Objection to the R&R. [Dkt 348].

Mikes/SCC continue to beat the dead horse of constructive knowledge in the hope of getting around the unavoidable conclusion that U.S. Fire's coverage is and always has been excess. Assuming that U.S. Fire had (constructive) knowledge of the *Suncoast* action in 1998, U.S. Fire's coverage for claims asserted at that time was purely excess.  The original *Suncoast* complaint alleged a claim for defamation and a claim for tortious interference with advantageous business relationship. [Dkt 1, Ex. A].  PHICO acknowledged in its initial reservation of rights that the defamation claim was covered or at least potentially covered and that  PHICO would defend *the entire lawsuit*. [Dkt 280, Ex. D].  Neither PHICO's policy nor U.S. Fire's policies afforded coverage for the claim of tortious interference, nor have Mikes/SCC have ever argued otherwise.  Even if U.S. Fire was apprised of the lawsuit in 1998, U.S. Fire's coverage for the claims asserted in the original complaint was purely excess.  Thus,, there never would have been an "automatic and self-effectuating duty" on the part of U.S. Fire to defend.

### *Facts Concerning the U.S. Fire's Failure to Comply with Florida Statutes - Further 1998-2000 Breaches of U.S. Fire's Obligations*

Mikes/SCC fail to explain how the original *Suncoast* action could have possibly triggered U.S. Fire's defense obligation.  U.S. Fire, as the excess insurer, had *no* defense obligation with respect to the original  *Suncoast* action and, as such, under well established law, it would not have been subject to the provisions of the Claims Administration Act (CAA).  *See Lazzara Oil Co. V. Columiba Cas. Co.*, 683 F. Supp. 777 (M.D. Fla. 1988); *Pepper's Steel & Alloys, Inc. V. USF & G, 668 F. Supp.* 1541, 1544 (S.D. Fla. 1987).[3]

---

[3] By Mikes/SCC's own admissions, the only claim which potentially triggered U.S. Fire's primary coverage was the claim for punitive damages, which was not asserted until December 2004.

Mikes/SCC attempt to manufacture U.S. Fire's non-existent breach of its non-existent defense obligations by pointing out that at one point *PHICO* attempted to withdraw its defense. PHICO's attempt proved unsuccessful and resulted in an adjudication that PHICO had a duty to defend the *Suncoast* suit.  By all accounts, Freedom suffered no harm whatsoever as a result of PHICO's abortive and short lived effort.  Critically, Freedom itself (which clearly had knowledge of U.S. Fire's coverage) never requested that U.S. Fire step in and defend the *Suncoast* action. Freedom sued only its primary insurer, PHICO, and obtained a declaration that PHICO (and only PHICO) was obligated to defend it in the *Suncoast* action. Mikes/SCC cannot now claim that U.S. Fire breached its duty to defend Freedom back in 2000 when Freedom itself never requested that U.S. Fire defend it and sought a judicial declaration only with respect to PHICO.  If Freedom ever had a viable claim that U.S. Fire owed it a defense upon PHICO's default, Freedom (and by assignment Mikes/SCC) are barred from pursuing such claim by the doctrines of waiver and *laches*. *See Dooley v. Weil*, 672 F.2d 1340 (11th Cir. 1982); *Thomas N. Carlton Estate, Inc. v. Keller*, 52 So.2d 131 (Fla. 1951);  *Miami Dade County v. Fernandez*, 905 So.2d 213 (Fla. 3rd DCA 2005); *Ticktin v. Kearin*, 807 So.2d 659 (Fla. 3d DCA 2001).[4]

---

[4] Mikes/SCC themselves never attempted to get U.S. Fire to step in and acknowledge coverage for their claims until May 2003 even though Mikes/SCC had *constructive knowledge* of U.S. Fire's coverage as of 1998. *See Allstate Ins. Co. v. Singletary*, 540 So.2d 938 (Fla. 2d DCA 1989)(claimant has a statutory right to obtain copy of defendant's insurance policy and is therefore presumed to have knowledge of terms and provisions of defendant's policy). The concept of constructive knowledge, with which Mikes/SCC's entire argument is so generously peppered, thus has an unintended result for Mikes/SCC in that it actually bars Mikes/SCC's claims against U.S. Fire. Having actual or constructive knowledge of U.S. Fire's coverage for over four years before making any effort to seek benefits under U.S. Fire's policies, Freedom and Mikes/SCC have waived their claims against U.S. Fire and are barred by laches from pursuing them.  Likewise, by entering into the 1999 settlement agreement with Freedom which limited their recovery solely to the proceeds of PHICO's policy (despite having constructive knowledge of U.S. Fire's coverage) Mikes/SCC waived any possible claim against U.S. Fire.

### *Facts Concerning 2003 Breaches of U.S. Fire's Obligations*

Mikes/SCC do not explain how in 2003, when U.S. Fire actually learned of the *Suncoast* suit, U.S. Fire would have had any primary coverage obligation for any portion of that suit.  As an excess insurer (in an action which was already being defended by the primary insurer) U.S. Fire had no obligation to provide a defense and was not subject to the CAA.  *See Lazzara Oil Co. v. Columbia Cas. Co.*, supra;  *Pepper's Steel & Alloys, Inc. v. USF&G*, supra.

In support of their contention, Mikes/SCC point to U.S. Fire's reservation of rights - the very document which would have satisfied U.S. Fire's obligations under the CAA *had* it applied. Mikes/SCC do not explain what more U.S. Fire should have or could have included in this initial reservation of rights , written within thirty days of first learning of a lawsuit which has been pending for over four years. Despite the fact that the letter repeats *three different times* that U.S. Fire "reserves all rights to limit or disclaim coverage," Mikes/SCC question how the magistrate judge could possibly conclude how such letter could be a "reservation of rights."  Sometimes, a cigar is just a cigar; and a letter which states that it is a reservation of rights is just that.

### *Facts Concerning U.S. Fire's 2004 Breaches of Obligations*

Mikes/SCC make conclusory allegations relating to U.S. Fire's alleged breaches of its Joint Defense Agreement ("JDA") with Freedom without explaining how U.S. Fire breached the agreement or how its actions violated the CAA.  The JDA was executed in order to allow U.S. Fire, as the excess insurer, to monitor (and if need be participate in) the defense of the *Suncoast* action which was being defended by the primary insurer.  The agreement resulted in U.S. Fire having access to defense counsel's reports and case evaluations. Based upon these reports U.S.

Fire concluded that Mikes/SCC's claims had little chance of success at trial and that Mikes/SCC's recovery, if any, most likely would not exceed the available primary coverage and invade U.S. Fire's umbrella layer.  It is unclear how any of this information was used by U.S. Fire "*to turn on the insureds to further U.S. Fire's interests.*" (Objection, p. 6).

Mikes/SCC feign indignation that U.S. Fire would file a declaratory action against its own insureds.  They neglect to mention that *they* rather than U.S. Fire were the ones who initiated an action for declaratory relief in state court and that U.S. Fire merely moved the situs of the coverage litigation to federal court by filing the present lawsuit.[5]

### Facts Concerning U.S. Fire's 2005 Breaches of Obligations - Breaches Preceding the October 2005 Mediation Ordered by this Court

Mikes/SCC attempt to establish breaches of U.S. Fire's unidentified "obligations" by relying upon description of U.S. Fire's actions contained in letters from Freedom's counsel.[6] The generously quoted letters to and from U.S. Fire's counsel support precisely what U.S. Fire has been saying all along.  Letters from Freedom's counsel confirm that  FIGA was defending the lawsuit; hence there was no reason for U.S. Fire to press the coverage action.  The letter of September 1, 2005, also confirms that Freedom had not tendered the defense of the *Suncoast* action to U.S. Fire (by threatening to do so). (Objection, p. 8).

---

[5] As the letters from insured's counsel demonstrated, Freedom objected not so much to U.S. Fire's declaratory action (which was filed in response to Mikes/SCC's own declaratory action) as to Mikes/SCC's improper attempts to use the declaratory action to obtain privileged information from Freedom to which they clearly were not entitled.

[6] Once again, Mikes/SCC have no problem in relying upon Ms. Hauser's description of U.S. Fire's conduct where it suits them.  When the same Ms. Hauser offered her description of the parties' settlement agreement in her deposition, Mikes/SCC found her input shockingly improper.

Letters from U.S. Fire's counsel (p. 9, Objection) reflect U.S. Fire's position that *if* FIGA ever defaulted on its obligation to defend the insureds, U.S. Fire would *then* consider picking up the defense. Despite Mikes/SCC's feats of verbal acrobatics, these letters support U.S. Fire's contention that: (a) it was never required to defend the *Suncoast* action and (b) it did *not* unequivocally refuse to do so.

Mikes/SCC's contention that U.S. Fire's conduct at mediation on October 5, 2005 amounts to an unequivocal denial of coverage is likewise misplaced. At mediation (the *third* mediation between these parties), U.S. Fire found Mikes/SCC's settlement posture intransigent and unreasonable and declined to enter into any type of settlement with Mikes/SCC. The issue of coverage was only one of several factors for U.S. Fire. Another factor was U.S. Fire's belief that Mikes/SCC were not going to obtain a verdict within U.S. Fire's coverage layer. The only conclusion which can be drawn from the mediation is that U.S. Fire and Mikes/SCC did not find common ground. To draw any other conclusion would require guesswork as to what *might* have happened *had* Mikes/SCC's settlement demands been other than what they were.

Mikes/SCC's assertion that U.S. Fire had an "extended opportunity" (Objection, p. 11) following mediation to do anything about the parties' settlement is unsupportable. The record confirms that the insureds never asked for U.S. Fire's consent and that U.S. Fire had no power to forbid the settlement. (Hauser, 25:4-10). Mr. Mikes himself advised U.S. Fire's counsel that U.S. Fire's consent to the settlement agreement was not necessary and was not being sought and that U.S. Fire would simply have to live with the consequences of the settlement. (Mikes, 5/19/06, Ex. 4). U.S. Fire was presented with a *fait accompli* of a done deal. It could take it or

-7-

leave it, but it could not undo it.

## INCORRECT / UNANNOUNCED LEGAL CONCLUSIONS OF R&R SECTION D
### *U.S. Provided Primary Coverage Over at Least Punitive Damages*

Virtually the entirety of Mikes/SCC's Objection rests on the premise that U.S. Fire provided primary coverage over the punitive damage portion of the *Suncoast* action. Thus, U.S. Fire had a *coextensive* duty with the primary carrier to provide a defense. U.S. Fire's failure to do so rendered the insureds free to enter into the unauthorized settlement with Mikes/SCC. The magistrate judge rejected Mikes/SCC's contention that U.S. Fire had any duty to provide a defense in the *Suncoast* action even after the addition of the punitive damage claim in December 2004. (R&R, p. 30). The R&R correctly found that as an umbrella carrier, U.S. Fire's duty of defense was *consecutive* to that of the primary carrier. Since FIGA was at all times defending the entire *Suncoast* action, including the punitive damage claim after it was added, U.S. Fire's defense obligation was never triggered. (R&R, pp. 30-31).

The R&R concluded (correctly) that U.S. Fire had no obligation to provide a defense in the *Suncoast* action *without* making a determination as to whether U.S. Fire's policy actually covered the punitive damage claim to begin with.[7] However, before we get to the conclusion that the punitive damage claim does not implicate U.S. Fire's duty of defense, it must be considered whether such claim is covered in the first place.

The claim for punitive damages was first asserted in the Eighth Amended Complaint which

---

[7] The R&R noted that U.S. Fire's 1995 policy did not have an express exclusion for punitive damages (like its subsequent policies), but did not engage in any further analysis of whether such damages were actually covered. (R&R, p. 30)

-8-

was filed in December 2004. (R&R, p. 30).  With respect to punitive damages, both counts of the complaint contain identical allegations, namely, that Mikes/SCC are entitled to recover punitive damages "*against Herold directly*" and "*against ARC and the partnership for vicarious liability (but not direct liability) for the punitive damages so assessed against Herold and for vicarious liability for punitive damages arising out of the statements and actions of Defendants' Representatives.*" (Eighth Amended Complaint, pp. 87, 91-92).  However, a further review of the allegations reveals that the claims against Freedom stemmed from allegations of misconduct of its president, Frank Herold, as well as other "Defendants' Representatives" of Freedom and ARC all of whom were executive officers and corporate representatives, and who acted in the course and within the scope of their authority on behalf of Freedom and ARC. (Eighth Amended Complaint, ¶¶ 15, 16, 17).  Finally, it was alleged that Freedom and ARC acted *through* Herold and the other Defendants' Representatives.  (Eighth Amended Complaint, ¶15).  Thus, it is clear that the claims against Freedom were not asserted merely in Freedom's *vicarious* capacity.  The Eighth Amended Complaint establishes beyond peradventure that such claims were based upon *Freedom's own* actions committed through its corporate officers.

Florida's public policy prohibits liability insurance coverage for punitive damages assessed against a person because of that person's own wrongful conduct.  *U.S. Concrete Pipe Co. v. Bould*, 437 So.2d 1061 (Fla. 1983).  This rule does not apply to punitive damages which are assessed *vicariously* solely for another's wrong, such as when punitive damages are assessed against an employer for the acts of an employee. *U.S. Concrete Pipe Co. v. Bould*, *supra*, at 1064.

-9-

With respect to corporate liability, however, it is recognized that a corporation can only act through its officers or agents.[8] Thus, any liability of a corporation for punitive damages stemming from the acts of its officers or agents is deemed to be *direct* liability for which no liability coverage can exist as a matter of public policy. *See, e.g.*, *Morgan International Realty, Inc. v. Dade Underwriters Ins. Agency*, 617 So.2d 455, 459 (Fla. 3d DCA 1993). If corporate liability for punitive damages rests upon the acts of a corporate officer, manager or owner, liability for such is barred on public policy grounds. See *Sterling Ins. Co. v. Hughes; Roberts v. R&S Liquor Stores, Inc.*, 164 So.2d 533 (Fla. App. 1966); *Morrison v. Hugger*, 369 So.2d 614 (Fla. 2d DCA 1979); *Travelers Ins. Co. v. Wilson*, 261 So.2d 545, 549 (Fla. 4th DCA 1979).

Because Freedom's alleged liability for punitive damages stemmed from the actions of its president and other corporate representatives, such liability was *direct* and not vicarious. No coverage could exist for such punitive damages as a matter of public policy. Thus, even after the addition of the punitive damage claim in December 2004, U.S. Fire never had any obligation to respond to the claim for punitive damages, since public policy prohibited coverage for such claim. The magistrate's conclusions and recommendations regarding U.S. Fire's defense obligation (or lack thereof) must be accepted.

### U.S. Fire Failed to Comply with the FCA Statute

Mikes/SCC continue to argue that U.S. Fire is barred by the CAA from asserting any legal defenses despite uncontroverted Florida law to the contrary. Mikes/SCC do not even attempt to

---

[8] This may be contrasted with a situation where a corporation may be vicariously liable for actions of its employees.

address the case law discussed in U.S. Fire's prior pleadings and at the hearing of May 17, 2007,

which plainly holds that the CAA applies only to liability insurers *with a duty to defend* and does

not apply as to *excess* insurers, such as U.S. Fire, which have no duty to defend. *Lazzara Oil Co.*

*v. Columbia Cas. Co.*, 683 F.Supp. 777 (M.D. Fla. 1988); *Pepper's Steel & Alloys, Inc. v.*

*USF&G*, 668 F.Supp. 1541, 1544 (S.D. Fla. 1987):

> Home, as an excess carrier with no duty to defend, and also... CNA, to the extent it is an excess
> carrier with no duty to defend, argue that this section of the statute is not applicable to them and
> that they cannot be said to have waived any right to assert coverage defenses predicated on an
> alleged failure to comply with it. ... Home argues that §627.426(2)(b) deals exclusively with
> arrangements concerning defense of the insured, retention of independent counsel, and
> delineation of the duties and obligations in relation to pending litigation. Home also argues that
> the statute is designed to address problems arising from disputes regarding whether, how and
> under what circumstances and conditions a defense will be provided for an insured pursuant to
> a defense provision of an insurance contract and is therefore not applicable to them. This court
> agrees...

Here, the insureds were at all times defended by their primary insurer, first by PHICO, and

then by FIGA. (R&R, p. 29). As the excess insurer, U.S. Fire's duty to defend, if it existed at

all, was consecutive and not coextensive with that of the primary carrier. *National Union Fire*

*Ins. Co. v. Travelers Ins. Co.*, 214 F.3d 1269 (11th Cir. 2000) (R&R, p. 28-30).

The assertion that U.S. Fire may have afforded primary coverage with respect to the punitive

damage claim does not alter this analysis. The claim for punitive damages was not covered as

a matter of public policy. Moreover, at the time the claim for punitive damages was added in

December 2004, the insureds were already being defended by FIGA and FIGA continued to

defend all claims in the *Suncoast* action, including the claim for punitive damages. Even if the

punitive damage claim was covered under U.S. Fire's policy, U.S. Fire as the excess insurer was

not obligated to defend it. Because U.S. Fire *never* had any primary responsibility to provide a

defense in the *Suncoast* action and because the primary insurer *always* had the duty to defend that action, U.S. Fire was not subject to the CAA. *Lazzara Oil Co. v. Columbia Cas. Co.*, supra; *Pepper's Steel & Alloys, Inc. v. USF&G*, supra.

Assuming, *arguendo*, that the addition of the punitive damage claim triggered the application of the CAA (which U.S. Fire disputes), U.S. Fire substantially complied with the CAA. In June 2003 U.S. Fire issued a reservation of rights letter to the insureds. [Dkt 252, Ex. B]. In that letter, U.S. Fire advised the insureds that it was *reserving* its rights "to limit or to disclaim coverage." [Dkt 252, Ex. B]. Since the insureds were already being defended by their primary insurer, there was no need to retain defense counsel. U.S. Fire also entered into the JDA with Freedom, which allowed U.S. Fire to both monitor and evaluate the *Suncoast* action on an ongoing basis and to allow U.S. Fire and to "cooperate in a joint defense effort" with Freedom in the *Suncoast* action. [Dkt 252, Ex C]. As an excess carrier, in an action which was already being defended by the primary carrier, there was nothing more that U.S. Fire *could* do to comply with the requirements of the Act. Finally, on December 27, 2004, almost immediately after the addition of the punitive damage claim, U.S. Fire filed this declaratory action which further served to advise the insureds of U.S. Fire's coverage position.

Even if the Court were to conclude that the CAA applied to U.S. Fire, the Court would likewise have to conclude that U.S. Fire substantially complied with the applicable provisions of the CAA. *See Lazzara Oil Co. v. Columbia Cas. Co.*, supra, (primary insurer substantially complied with the statute where it apprised insured of its coverage position); *Pepper's Steel & Alloys, Inc. v. USF&G*, supra, (same).

### U.S. Fire Breached its Duty of Good Faith and Fair Dealing with the Insureds

Mikes/SCC argue that the R&R has ignored U.S. Fire's breach of its *"duty of good faith and fair dealing."* (Objection, p. 14). In support of this contention Mikes/SCC cite numerous cases, *every one of which* deals with claims of *bad faith* against an insurer.  It is axiomatic that before Mikes/SCC can establish a claim for bad faith against U.S. Fire, they must establish that U.S. Fire owes coverage for such claim in the first place.  *See Blanchard v. State farm Mut. Auto. Ins. Co.*, 575 So.2d 1289 (Fla. 1991); *Taylor v. Great American Ins. Co.,* 2005 WL 3233104 (M.D. Fla. 2005); *Lane v. Provident Life and Accident Ins. Co.*, 71 F. Supp.2d 1255 (S.D. Fla. 1999); *O'Rourke v. Provident Life & Accident Ins*. Co., 48 F. Supp.2d 1383,1384 (S.D. Fla. 1999). Mikes/SCC's assertion that the magistrate judge was wrong in not addressing Mikes/SCC's allegations of *bad faith* against U.S. Fire before U.S. Fire's coverage has even been established should be disregarded.

### The R & R Ignored the Requirements of the Ramos Decision

The magistrate judge did not err in "overlooking" the *Ramos* decision, since *Ramos* has no application to the facts of this case. *Ramos* addressed a situation where the insurer is faced with an ongoing failure by the insured to cooperate in the defense of the lawsuit. Because of  the insured's continued failure to cooperate, the insurer in *Ramos* was unable to confirm various facts pertaining to the loss, was unable to evaluate the liability situation, was unable to obtain witness information and was generally unable to obtain the insured's cooperation in the defense of the case. The Supreme Court held that before the insurer would be allowed to simply disclaim coverage it  would be required to show that it exercised due diligence in bringing about the

-13-

insured's cooperation.

*Ramos* is inapplicable in a case where, as here, the insurer is faced with in a single, but irreversible act of non-cooperation by the insured.  The carriers were presented with the *fact* of insured's settlement *after* it happened.  By then, there was no issue of trying to bring about the insured's cooperation.[9] U.S. Fire was simply advised of the settlement.  The damage had been done.

Under applicable law,  there can be no coverage for a settlement negotiated by the insured without insurer's consent while the insured was being provided with a defense.  See *United National Ins. Co. v. Jacobs*, 754 F. Supp. 865 (M.D. Fla. 1990); *American Reliance Ins. Co. v. Perez*, 712 So. 2d 1211(Fla. 3d DCA 1998); *First American Title Ins. Co. v. National Union Fire Ins. Co. Of Pittsburgh*, 695 So.2d 475 (Fla. 3d DCA 1977).  This result is consistent with a long line of Florida cases holding that in order for a settlement to be enforceable against an insurer where the insurer is not a party to the settlement, the claimant must prove: (a) coverage; (b) **wrongful refusal to defend** and (c) that the settlement was reasonable.  *Ahern v. Odyssey Re (London) Ltd.*, 788 So.2d 369 (Fla. 4th DCA 2001);  *Employers Reinsurance Corp. v. Amphion Holdings, Inc.*, 733 So.2d  588 (Fla. 3rd DCA 1999); *Quintana v. Barad*, 528 So.2d 1300 (Fla. 3rd DCA 1998); *Shook v. Allstate Ins. Co.*,498 so.2d 498 (Fla. 4th DCA 1996); *Independent Fire Ins. Co. v. Paulekas*, 633 So.2d 1111 (Fla. 3d DCA 1994).

---

[9] When U.S. Fire inquired (upon learning of the settlement agreement) whether it would be given an opportunity to review the actual agreement before it was finalized, Mikes/SCC advised U.S. Fire that there was no reason for U.S. Fire to review the agreement, since U.S. Fire's consent to the agreement was not necessary and was not being sought. (Mikes, 5/19/06, Ex. 4).

Because there is no dispute that  insureds were at all times being defended in the *Suncoast* action, their unauthorized settlement with Mikes/SCC relieved U.S. Fire of any liability for such settlement.  The R&R correctly so concluded and that conclusion should be accepted by the Court.

### *The R & R Did Not Consider the Full Extent of U.S. Fire's Prior Breaches Allowing the Insureds to Settle*

The R&R correctly concluded that U.S. Fire did not breach any duties to the insureds.  U.S. Fire did not breach any duty to the insureds in 1998, (even assuming U.S. Fire's *constructive* knowledge of the suit), since U.S. Fire's coverage for the claims asserted in the original complaint was purely excess over PHICO, which had accepted the defense of the *Suncoast* action.  U.S. Fire would have had no duty to provide a defense at that time and, hence, no duty to comply with the Claims Administration Act.

The same analysis holds true as of 2003 when U.S. Fire was actually advised of this action. U.S. Fire's coverage of the claims pending at that time was purely excess.  The *Suncoast* action was being defended by FIGA, which by then was *required* to provide such defense by virtue of a prior order establishing such duty on the part of PHICO.

The addition of the punitive damage claim in December 2004 did not impact U.S. Fire's defense obligation in any way, shape or form. The punitive damage claim did not implicate U.S. Fire's coverage, because coverage for such claim was barred as a matter of public policy.  Even assuming, *arguendo*, that the punitive damage claim was covered or potentially covered under U.S. Fire's policy, U.S. Fire's indemnity coverage for such claim did not transform U.S. Fire's

-15-

policy into a primary policy with regards to U.S. Fire defense obligations.  U.S. Fire's defense obligations were and always remained consecutive to those of the primary insurer.

U.S. Fire also did not breach the JDA or any other duty of good faith and fair dealing by exercising its right to pursue the present coverage action while reserving all rights to challenge coverage for the claims asserted against its insureds.  U.S. Fire never "threatened" FIGA in order to force FIGA to continue to provide a defense in the *Suncoast* action.  FIGA had always acknowledged its duty and readiness to defend the *Suncoast* action, particularly given the judicial decree which required it to do so.  (Allen 26:16-27:2;  45:16-46:25).  Lastly, U.S. Fire did not breach any duty to the insureds by declining to give in to Mikes/SCC's exorbitant and unreasonable settlement demands at the mediation of October 5, 2005.

### The R&R Did not Consider the Applicable Florida Law Regarding U.S. Fire's Breached Duty to Defend as a Primary Insurer -FIGA's Defense Does not Satisfy U.S. Fire's Duty

The R&R considered thoroughly the law pertaining to U.S. Fire's defense obligations and even went beyond the authorities cited by both sides.  The magistrate judge correctly concluded that as the excess insurer with no primary duty of defense *"under U.S. Fire's policy, considerations of Florida law, and generally accepted insurance principles, U.S. Fire did not breach its duty to defend in this case."* (R&R, p. 28).  In the face of express and extensive legal precedent supporting this conclusion (R&R, pp. 27-31), Mikes/SCC fail to offer a *single* reported decision to support their assertion that an excess insurer may be required to provide a defense

-16-

in an action where the primary insurer is already providing a defense.[10]

The *National Union* case is squarely on point insofar as it addresses the defense obligation of an excess insurer with policy provisions *identical* to those of U.S. Fire. *National Union Fire Ins. Co. v. Travelers Ins. Co.*, *supra*. The decision in *National Union* is consistent with other decisions of Florida federal and state courts which hold that the duty of defense of an excess insurer is always secondary to that of the primary. *See American Family Life Assurance Co. v. United States Fire Co.*, 885 F. 2d 826 (11th Cir. 1989)*; American & Foreign Ins. Co. v. Avis Rent-A-Car System, Inc.*, 401 So. 2d 855 (Fla. 1st DCA 1981); *Cunningham v. Austin Ford, Inc.*, 189 So. 2d 661 (Fla. 3d DCA 1966), *cert dism.*, (198 So. 2d 829).

U.S. Fire, as the excess carrier, was never obligated to provide a defense since the primary carrier was already defending the *Suncoast* action in its entirety. Not only was the primary insurer providing a defense, but its duty to do so had been judicially established, thus *guaranteeing* that the defense would be provided until the case was resolved. FIGA, by its own admission, had no choice but to defend the case no matter what. (Allen 45:20-23).[11]

Mikes/SCC are wrong in asserting that U.S. Fire had no right to rely upon the defense provided by FIGA. U.S. Fire had every right to do so. Under well established Florida law, an excess insurer stands in the shoes of the *insured* and assumes the rights as well as the

---

[10] The Florida cases cited by Mikes/SCC in footnote 21 of the Objection all address situations involving *primary* insurers with *coextensive* duties of defense. The *Duff* case is inapposite because it involved a primary and an excess insurer *both* of which refused to defend.

[11] FIGA's corporate representative also confirmed that FIGA had always accepted that it alone had the primary obligation to defend the entire lawsuit and that it was prepared to do so through trial if necessary. (Allen 26:16-27:2; 45:16-46:25).

-17-

responsibilities that the *insured* would normally have with respect to the primary carrier.  *See Kivi v. Nationwide Mutual Ins. Co.*, 695 F.2d 1285 (11th Cir. 1983); *Galen Health Care, Inc. v. American Cas. Co.,* 913 F.Supp. 1525 (M.D. Fla. 1996); *Ranger Ins. Co. v. Travelers Indem. Co.*, 389 So. 2d 272 (Fla. 1st DCA 1980); *General Accident Fire & Life Assurance Corp., Ltd.*, 390 So. 2d 761 (Fla. 3d DCA 1980).  Whatever defense obligations FIGA owed to the insured, it also owed to U.S. Fire.[12]  Therefore, the defense which FIGA (and PHICO before it) provided in the *Suncoast* action inured directly to the benefit of U.S. Fire as the excess insurer.  The fact that an excess insurer may have defense obligations under its own policy do not render such insurer primarily liable for the defense; the primary insurer's duty to defend, like its coverage, at all times remains primary.  *American & Foreign Ins. Co. v. Avis Rent-A-Car System, Inc.*, 401 So. 2d 855 (Fla. 1st DCA 1981);  *Cunningham v. Austin Ford, Inc.*, 189 So. 2d 661 (Fla. 3d DCA 1966), *cert dism.*, 198 So. 2d 829).

### The R&R Conclusion that U.S. Fire Did Not Deny Coverage Ignores the Relevant Record Evidence to the Contrary - U.S. Fire Did Deny Coverage as of the Relevant Time Permitting Settlement Without U.S. Fire's Consent

The R&R correctly found that there was no unequivocal denial of coverage by U.S. Fire. In challenging that conclusion, Mikes/SCC argue that the magistrate judge gave no consideration to the "perspective" of "the boots on the ground," i.e., Freedom's defense counsel.  (Objection,

---

[12] Under *Jones v. Florida Ins. Guaranty Assoc. Inc.*, 908 So. 2d 435 (Fla. 2005), FIGA's duty of defense is identical in all respects to that owed by the insolvent carrier.  Similarly, FIGA owed to U.S. Fire the same duties as would have been owed to U.S. Fire by PHICO.

-18-

pp 22-23).[13]   The R&R correctly found that U.S. Fire's actions viewed as a whole were not consistent with an outright and unequivocal denial of coverage.   Instead, such actions were consistent with the conduct of an excess insurer which is proceeding under a reservation of rights.   From the moment U.S. Fire actually learned of the *Suncoast* action, U.S. Fire did everything (and more) that an excess insurers was supposed to do - it entered into a joint defense agreement with insureds, monitored the defense of the lawsuit, attended depositions, analyzed potential exposure, set up reserves, evaluated settlement opportunities and (as all excess insurers) hoped that if the case went to trial that the award (if any) would not reach into its layer.[14] Furthermore, all of this was done after U.S. Fire initially and unmistakably reserved all of its rights to limit or disclaim coverage which reservation was communicated to the insureds by letter of June 12, 2003, repeated in subsequent communications and reaffirmed in U.S. Fire's complaint for declaratory relief in this action.

U.S. Fire's counsel's correspondence reflecting U.S. Fire's settlement/mediation position was nothing more than litigation posturing designed to set the stage for mediation.[15]   Invariably, litigants take extreme settlement positions only to reach common ground at mediation or on the steps of the courthouse.  U.S. Fire's posturing as to what it *might* offer at mediation was no more

---

[13] Once again, Mikes/SCC would ask the Court to consider the opinions of the "boots on the ground" when it suits them, but ignore the "perspective" of the very same "boots" characterizing the settlement agreement as not creating a legally binding obligation.

[14] Even if U.S. Fire had received actual notice of the lawsuit in August 1998, it still would have done exactly the same things.

[15] The letter was addressed to the *mediator* (and copied to all counsel) and was designed to give the mediator the 'lay of the land' from U.S. Fire's perspective and to provide him with the tools to effectively negotiate with Mikes/SCC during mediation.

telling than Mikes/SCC's counsel's bluster that Mikes/SCC's claim was worth untold millions of dollars.  The letter itself makes clear U.S. Fire's belief that it has no liability for any damages being claimed by Mikes/SCC.   U.S. Fire's position of no *liability* is not the same as an unequivocal denial of *coverage*.  The letter goes on to explain that one of the reasons U.S. Fire believes that it has no liability for any damages in this case is because it does not believe that Mikes/SCC's claims could ever exceed the amounts of underlying insurance and invade U.S. Fire's umbrella layer:

> In order to pay anything to the plaintiffs in this case, U.S. Fire would have to concede that plaintiffs' claims have a jury verdict potential that approaches or exceeds **NINE MILLION DOLLARS**.  (Emphasis in the original). The same claims that plaintiffs are wiling to settle for $50,000 or $75,000 in 1998.  We are not prepared to make such concession. ...

> If plaintiffs really believe that their case is worth millions of dollars in damages, they will have to convince the jury in the tort action of that fact.  Unless and until that happens, U.S. Fire is not prepared to concede that plaintiffs' alleged damages exceed the amount of underlying insurance. This is another reason why U.S. Fire is not prepared to offer any money to settle this matter.

The R&R correctly found that U.S. Fire's conduct (including its settlement posture) did not amount to an unequivocal denial of coverage.  At most, U.S. Fire's settlement posture reflected a serious disagreement between U.S. Fire and Mikes/SCC over the value of Mikes/SCC's claims.

## CONCLUSION

For the reasons set forth in the magistrate's R&R and for the reasons set forth above, Mikes/SCC's Objection should be rejected and the Court should accept the magistrate's recommendation that U.S. Fire's Motion for Summary Final Judgment be granted.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a copy of the foregoing **Amended Response to Mikes/SCC's Objections to Magistrate's Report and Recommendations [Dkt 350]** was electronically filed with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following: **James R. Mikes, Esq.**, James R. Mikes, P.A., 3702 West Kennedy Boulevard, Post Office Box 24269, Tampa, Florida 33623 and **Betsy L. McCoy**, Law Offices of Betsy L. McCoy, P.A., 444 Valencia Avenue #3, Coral Gables, FL 33134 this 24th day of September, 2007.

                _____ STEPHENS LYNN KLEIN LaCAVA
HOFFMAN & PUYA, P.A.
***Attorneys for Plaintiff***,
**United States Fire Insurance Co.**
Two Datran Center - PH II
9130 South Dadeland Boulevard
Miami, Florida 33156
Telephone: (305) 670-3700
Facsimile:(305) 670-8592

By:             /s/ Gary Khutorsky
         GARY KHUTORSKY (FBN 814271)
         YELENA SHNEYDERMAN (FBN 0015718)

H:\library\03\034708\p\U.S. FIRE PLEADINGS\Response to Objectinos.wpd-YS-3.wpd